City of Bristol v. Bostwick.

CITY OF BRISTOL *et al. v.* WM. H. BOSTWICK *et al.*

(*Knoxville.* September Term, 1917.)

1. **MUNICIPAL CORPORATIONS.** Public buildings. Bonds of contractors. Right to sue.

Where a contractor on a public building gave a bond securing performance and also payment of materialmen and laborers, and he defaulted in both respects, the city could sue on its own claim for the additional cost of completion, and also in behalf of the laborers and materialmen whose claims were unpaid. (*Post, pp.* 309, 310.)

Acts cited and construed: Acts 1915, ch. 192; Acts 1899, ch. 182.

Cases cited and approved: Perkins Oil Co. v. Eberhart, 107 Tenn., 409; Knight & Jillson Co. v. Castle, 27 L. R. A. (N. S.), 573.

2. **MUNICIPAL CORPORATIONS.** Public buildings. Bonds of contractors.

Where contractor on a public building executed a bond for performance and on his telegraphic request, after advice of the city attorney, the surety by wire consented to insert the words, "and pay for all materials and labor," as required by Acts 1899, chapter 182, such addition became a part of the contract, and the bond validity secured both performance and payment for materials and labor. (*Post, pp.* 310-313.)

3. **CONTRACTS.** Construction.

It is the duty of the court primarily to construe every contract to effectuate the intention of the parties, though it may be necessary to ignore apparently inconsistent language. (*Post, pp.* 310-313.)

Cases cited and approved: Hardison v. Yeaman, 115 Tenn., 639; Equitable Surety Co. v. U. S., for Use, etc., 234 U. S., 448.

4. **MUNICIPAL CORPORATIONS. Public buildings. Bonds of contractors.**

Mere fact that a contractor's bond, securing both performance, under Acts 1915, chapter 192, and also payment for labor and materials, under Acts 1899, chapter 182, was in a penalty larger than that required by the act of 1899 did not indicate that the parties were unmindful of the latter statute. (*Post, pp.* 313, 314.)

5. **MUNICIPAL CORPORATIONS. Public buildings. Contractor's bonds. Liens of laborers. Time to file.**

Where contractor on public building was enjoined from continuing contract, filing of labor and material claims within thirty days from such injunction was sufficient compliance with Acts 1899, chapter 182, section 4, requiring such claims to be filed within thirty days after completion of the contract. (*Post, pp.* 314, 315.)

Case cited and approved: Basham v. Toors, 51 Ark., 309.

Code cited and construed: Sec. 3540 (T.-S.).

6. **PLEADING. Demurrer, Effect.**

All averments of the petition must be taken as true on demurrer. *Post, p.* 316.)

7. **MUNICIPAL CORPORATIONS. Public buildings. Contractor's bonds. Right to sue.**

Though the city had in its hands and due the contractor more than enough money to pay, all labor and material claims, its suit on the contractor's bond, securing both performance and payment of claims, setting up his abandonment of the contract and the additional cost of completion and the liens and claims of labor and materialmen, was not premature. (*Post, p.* 316.)

8. **MUNICIPAL CORPORATIONS. Public buildings. Contractor's bonds. Actions. Right to sue.**

Where contractor gave single bond securing performance and also payment of labor and material claims and the city sued the surety for the additional cost of completion after the contractor abandoned the work, also setting up the claims of materialmen and laborers, demurrers to the separate petitions of the various

139 Tenn.—20

laborers and materialmen should have been sustained, since the bill was not one of interpleader nor a general creditor's suit. (*Post, pp.* 316, 317.)

9. **MUNICIPAL CORPORATIONS.** Public buildings. Actions. Questions for jury.

Where the city sued on a contractor's bond for his failure to complete the building, it was for the jury whether the city could recover liquidated damages for failure to complete the building. (*Post, pp.* 317, 318.)

---

FROM SULLIVAN.

---

Appeal from the Chancery Court of Sullivan County.—HAL H. HAYNES, Chancellor.

ST. JOHN & GORE, for City of Bristol.

CHARLES C. TRABUE and ST. JOHN & GORE, for E. & N. Lumber & Mfg. Co.

HENRY ROBERTS, for Henry Hayes.

J. H. BUNDREN, for Trussed Concrete Steel Co.

J. CARL LAMBDIN and RUFUS M. HICKEY, for Citizens' Savings Bank & Trust Co.

H. T. CAMPBELL, for Mitchell-Powers Hardware Co.

PARK & PARK, CHAS. T. CATES, JR., and Wm. M. HALL, for Wm. H. Bostwick and U. S. Fidelity & Guar. Co.

HEAZEL & CAMBLOS, for Kingsport Brick Corporation.

O. L. WHITE, for S. B. White.

MR. JUSTICE GREEN delivered the opinion of the Court.

This bill was filed by the city of Bristol and the city board of high school commissioners against William H. Bostwick, the contractor who had undertaken to erect a new high school building for the city; and against the United States Fidelity & Guaranty Company, surety on Bostwick's bond, and against several laborers and materialmen.

The bill averred that, in pursuance of chapter 192, of the Acts of 1915, which authorized the city of Bristol to erect a high school and issue bonds for that purpose, the high school commissioners created by the act had entered into a contract with Bostwick, whereby he was to erect the said building at a contract price of $48,000. The building was to be completed in the fall of 1916. It was not so completed, and in March, 1917, it was alleged that Bostwick abandoned the job. It was averred that he had executed the bond heretofore referred to, which will be more particularly mentioned later, and that this bond was conditioned to pay for all labor and materials furnished, as well as for the indemnity of the city of Bristol. It was stated in the bill that there were numerous laborers and materialmen who

had filed claims with the high school commissioners, as provided by chapter 182 of the Acts of 1899, and that there were other laborers and materialmen whose claims would be filed in due season, and a recovery on the bond was sought for the benefit of such laborers and materialmen. The bill also sought a recovery against the surety of liquidated damages stipulated in the contract for the benefit of the city for the delay in completing the school building. It appeared from the allegations of the bill that a sum of money was still in the hands of the city, not yet paid out on account of the contract, and the city declared its willingness to appropriate this fund as the court might decree according to the equities of the case. The bill was thus exhibited both for the city and on behalf of the laborers and material-men to recover from the bondsman the amount that might be due after proper application of the funds retained and in the hands of the city. The city's claims were more fully set out in an amended bill that was later filed.

Demurrers were interposed by the guaranty company and by the assignee of the contractor. Various laborers and materialmen came into the suit, some by petition, some by cross-bill, and another by the consolidation of an independent suit with the case at bar.

The grounds of the surety's demurrer, in most of which the assignee of the contractor has joined, are too numerous to permit of detailed discussion in a

judicial opinion.   Three or four general questions are raised, and in disposing of such questions the reasons of our ruling on each ground of the demurrer will be apparent.   The chancellor overruled the demurrers *in toto*, and the surety and the contractor's assignee have appealed.

The first question made is upon the right of the city of Bristol and its high school commissioners to bring this suit.   It is said that this is not a bill of interpleader, and, inasmuch as the city cannot be held responsible for these claims of laborers and material-men, it has no right to bring a suit of the character which a property owner may bring when his property is threatened with the liens of subcontractors. *Perkins Oil Co.* v. *Eberhart,* 107 Tenn., 409, 64 S. W., 760. Both of these objections are doubtless well taken.

However, the fact remains that the city has a right to bring suit on its own claim, and we think there can be no doubt that it has a right to bring suit in behalf of the laborers and materialmen if these parties are protected by the bond which the surety company executed.   The bond runs in the name of the city, and though it be for the benefit of other parties according to the best practice, an action is properly brought in the name of the nominal party for the use of the real beneficiary.

It seems never to have been doubted that the obligee of such bonds might bring a suit for the benefit of laborers and materialmen intended to be protected by the bond.   The serious question has

been whether such third parties had a right themselves to sue in the absence of statutory authority. This is a question on which the courts are divided. It is not doubted, however, in any jurisdiction where common-law practice prevails, that the obligee of a bond given to secure laborers on public works may bring suit for the use of such laborers. Many cases are collected and discussed in a note to *Knight & Jillson Co.* v. *Castle*, as reported in 27 L. R. A. (N. S.), 573. See concluding paragraph of note on page 601.

It is next contended for the surety that the bond sued on is not a statutory bond which secures the claims of laborers and materialmen, but a bond given only for the indemnity or protection of the city of Bristol. It is accordingly urged that neither the subcontractors, nor the city suing for them, can have any right of action on the bond for labor and material furnished. *Hardison* v. *Yeaman*, 115 Tenn., 639, 91 S. W., 1111.

This bond as first executed was a mere indemnity bond for the protection of the city of Bristol, with certain restrictive clauses. Such a bond was required by chapter 192 of the Acts of 1915, which authorized the city to construct this building.

Before the bond was accepted by the city, however, its attorney advised that there be inserted therein a clause protecting laborers and materialmen, as required by chapter 182 of the Acts of 1899. Accordingly a telegram was sent by the contractor to the

home office of the guaranty company in the following language:

"City attorney of Bristol wants inserted in bond executed for me to building commission, April 25th, page two, line three after word fulfilled, following, quote. And pay for all materials and labor used in said contract in lawful money of the United States. Being language required by chapter 182, Acts 1899. See Hardison against Yeaman, one hundred and fifteen Tennessee, page six thirty-nine. Wire authority to W. G. Sheen and Co., here to insert clause."

To this telegram the guaranty company replied:

"Upon request of William H. Bostwick, insert in bond number two five five three five four dash sixteen on page two line three after word fulfilled, the following, and pay for all materials and labor used in said contract in lawful money of the United States."

Sheen & Co., the local agents of the guaranty company, inserted the words authorized in the bond. These are the exact words required by chapter 182 of the Acts of 1899, which act makes it the duty of those who let contracts for any public building to take a bond so conditioned for the protection of laborers and materialmen.

The telegrams quoted are just as much a part of the contract entered into by the Guaranty Company as is the printed form which it executed first. The company was asked to make a bond which would comply with the provisions of the Acts of 1899, and

the very language of the act was authorized by the
company to be inserted in the bond already sent
down.    The attention of the company was called to
the statute and to the decision of this court con-
struing the statute, and it is idle to say that it was
not intended by the parties to make the bond include
the requirements of said statute.

When this bond was taken, there were two statutes
affecting the duties of the high school commissioners
of Bristol in the premises.    The act of 1915 required
them to take a bond for the indemnity of the city;
the act of 1899 required them to take a bond for
the protection of the laborers and materialmen.

There can be no objection fairly urged to the
attempt to take one bond embodying the provisions
of both statutes.    The act of Congress respecting
contracts for public buildings generally, and the act
of Congress respecting contracts for public buildings
in the District of Columbia, both require bonds for
the protection of the government and bonds for the
protection of subcontractors.    It has been repeatedly
held by the lower federal courts, and finally held
by the United States supreme court, that one bond
may be made to protect both the subcontractor and
the government, that there is no obstacle to the
assumption by a surety of such a dual obligation,
and that such obligation will be enforced in favor of
the several beneficiaries according to their respective
rights.    *Equitable Surety Co.* v. *U. S., for Use, etc.,*

234 U. S., 448, 34 Sup. Ct., 803, 58 L. Ed., 1394, and cases therein reviewed.

We are accordingly of opinion that the surety here intended to execute a bond which would comply with the provisions both of the act of 1899 and of the act of 1915, the bond protecting laborers and materialmen as well as the city of Bristol. It was so designed by the parties, and it is the duty of the court primarily to construe every contract to effectuate the intention of those contracting. This will be done even though it be necessary to ignore certain apparently inconsistent language contained in the instrument.

The circumstance that the bond was in a penalty larger than that required by the act of 1899 does not indicate that the parties were unmindful of that statute. The bond, being intended to comply with the provisions of the act of 1915 as well as the act of 1899, would naturally be in a larger sum than compliance with the earlier act alone would have required.

It is again insisted that the claims of these materialmen and laborers cannot be allowed because seasonable notice was not given by them to the proper authority, as required by the act of 1899.

Section 4 of said act provides:

"That the laborer or furnisher of materials, to secure advantage of this act, shall file with the public officer who has charge of the letting of any contract, an itemized statement of the amount owed

by the contractor for the materials and labor used, within thirty days after the contract is completed.''

It is averred in the bill, with respect to the claims of those subcontractors for whom suit is brought, that notice was filed with the officers having this contract in charge, as required by law, within thirty days after the contractor abandoned work on this building.

It appears that in another litigation a receiver was appointed for this contractor, and he was enjoined by the court from further proceeding with any of his contracts, including the one at Bristol, and work there was accordingly abandoned by him. Within thirty days from this time, according to the averments of the bill, itemized statements of these claims were duly filed by certain laborers and materialmen mentioned.

We think such a filing of these statements is a compliance with the provisions of the statute. The statutory provision is that the itemized statements shall be filed ''within thirty days after the contract is completed.'' The contract referred to is the contract between the principal contractor and the officers having the public work in charge.

When the principal contractor abandons the work, as when his affairs are placed in the hands of a receiver, so far as he is concerned, he has terminated his contract. He has completed all the work he intends to do thereunder, and for the purpose of filing laborers' claims such a contract is completed.

Another construction would defeat the purpose of the statute in every case of contractor's default.

The act of 1899, in its provision for notice, differs from our mechanic's lien statute. The latter requires that the notice of the subcontractor be served within thirty days after the building is completed, or within thirty days after "the contract of such laborer, mechanic, or workman, shall expire," etc. Thompson's Shannon's Code, section 3540. Under the act of 1899, there is no authority for laborers and materialmen serving notice of their claims after completion of the building, unless that event marks the completion of the principal contract. Nor have such laborers and materialmen an opportunity to secure their demands by giving notice within thirty days from the expiration of their own contracts. Notice must be given within thirty days from completion of the principal contract, not from completion of the subcontract.

So we must hold that notice given within thirty days from the principal contractor's default perfects the subcontractor's claim on the bond under the act of 1899. This is the only chance of the subcontractor to obtain the benefit of a statute peculiarly designed for his protection under just such conditions.

See *Basham* v. *Toors*, 51 Ark., 309, 11 S. W., 282, construing provision of mechanic's lien statute as to notice somewhat similar to such provision in Act of 1899.

The city of Bristol made an allegation of compliance with the statute for the subcontractors in whose behalf it sued. Other subcontractors who came into the case later alleged compliance with the statute on their own behalf. All these averments must, of course, be taken as true on demurrer.

It is also urged by the surety that this proceeding on the part of the city was premature. The ground of the objection is that it appeared from the original bill that the city had enough funds in its hands to pay all claims and something over, and that it did not appear that there would be any deficiency or lack of funds to pay subcontractors. This construction of the bill is not sound, however, if the city should be allowed anything like so much as it claims in the way of liquidated damages. In the latter event, there would be a very considerable shortage, manifestly.

Moreover, in the bond executed by it, the guaranty company limited the time in which an action might be brought to April 25, 1917, and the bill herein was filed April 13, 1917. It is not necessary to discuss the validity of this stipulation in the bond. Inasmuch, however, as such a stipulation is therein contained, the guaranty company is not in a condition to urge prematurity and charge undue haste against the city.

The guaranty company also insists that the laborers and materialmen had no reason to file petitions or cross-bills or other pleadings seeking affirmative

relief in this case, and it demurred to these pleadings on this ground.

We think this contention is well made as to those subcontractors for whose benefit the suit was brought and whose claims were properly set out in the bill. As said before, this is not a bill of interpleader nor a general creditor's suit nor a property owner's suit to have liens determined and declared. It is merely a suit by the city, a *quasi* trustee, for the benefit of itself and for certain laborers and materialmen. Under no other theory could the bill be maintained so far as has been suggested to the court.

These subcontractors might, in the first instance, have brought independent suits if they so desired under the statute, but there was no occasion for them coming in this case by petition or cross-bill. This is true as to those in whose behalf suit had been brought by the city and as to whose claims necessary allegations had been made in the city's bill. It follows, therefore, that the demurrers to these petitions and cross-bills should have been sustained except as to those parties who had not filed notice of their claims prior to the bill and whose demands were not included in the bill.

Under the terms of the contract the chancellor was correct in overruling the demurrer challenging the city's right to sue for liquidated damages, on account of the delay in the completion of the building. This is a matter for proof, and should be determined on the remand.

Except as indicated herein, the chancellor's decree will be affirmed. The costs of this court will be divided between the appellants. The costs below will be adjudged by the chancellor, who will tax those filing unnecessary pleadings, as above indicated, with the costs thereof.