## J. W. Cass *v.* G. F. Smith *et al.*

## (*Knoxville.* September Term, 1921.)

1.. **SCHOOLS AND SCHOOL DISTRICTS.** School building contractor's bond held common-law bond to protect school board and a statutory bond to protect materialmen and laborers.

High school building contractor's bond, conditioned for contractor's performance of the contract and payment for all material and la·bor used, *held* a common-law bond to indemnify a school board, and a statutory bond under Acts 1899 chapter 182, to protect materalmen and laborers. (*Post, pp.* 225, 226.)

Acts cited and construed: Acts 1899, ch. 182.

2. **SCHCOLS AND SCHOOL DISTRICTS.** Failure of bond to require payment for material and labor in lawful money of the United States held immaterial.

A contractor's bond executed under Acts 1899, chapter 182, section 1, requiring public contractor to execute a bond to "pay for all the materials and labor used in said contract, in lawful money of the United States," *held* not void in that it merely required the contractor to pay for material and labor without requiring such payment to be made "in lawful money of the United States," the omission of the quoted words in the bond being immaterial. (*Post, pp.* 225, 226.)

Case cited· and approved: City of Bristol v. Bostwick, 139 Tenn., 304.

3. **SCHOOLS AND SCHOOL DISTRICTS.** Provision in contractor's bond held surplusage.

Provision in contractor's bond to protect laborers and materialmen under Acts 1899, chapter 182, where a contractor to discharge "any and all obligations . . . that may or shall constitute an in debtedness upon said structures," *held* surplusage to be disre-

Cass v. Smith.

garded, having reference to mechanics' liens which cannot attach to public buildings. (*Post, p.* 226.)

Case cited and approved: Hardison v. Yeaman, 115 Tenn., 639.

4. **SCHOOLS AND SCHOOL DISTRICTS.** Contractor's receiver cannot sue on contractor's bond for benefit of laborers and materialmen protected thereby.

A contractor's receiver could not bring action on contractor's bond executed under Acts 1899, chapter 182, for protection of materialmen and laborers, since such suit should be instituted by the materialmen and laborers themselves, or by the school board for their benefit. (*Post, pp.* 226, 227.)

5. **ATTORNEY AND CLIENT.** Solicitors of contractor's receiver suing on contractor's bond held not entitled to fee out of funds in hands of school board ordered paid into court.

Where action on public contractor's bond executed for protection of laborers and materialmen under Acts 1899, chapter 182, was brought for the benefit of such laborers and materialmen by the contractor's receiver instead of by the claimants themselves, or by the school board for their benefit, the solicitors for the receiver were not entitled to their fee out of the funds in the hands of the school board which the court ordered paid into court. (*Post, pp.* 227., —)

6. **SCHOOLS AND SCHOOL DISTRICTS.** Supplemental contract held not to affect rights of laborers and materialmen under contractor's bond.

Supplemental contract between school board and contractor, involving changes in original plan necessitating extra expense of $2,000, to which the contractor's surety did not consent, did not affect the rights of materialmen and laborers who did not participate in alteration agreement, under the contractor's bond executed under Acts 1899, chapter 182, for the benefit of laborers and materialmen, though material was furnished under supplemental contract, where the original contract provided that alterations might be made without vitiating the contract. (*Post, pp.* 227-230.)

Case cited and distinguished: Equitable Surety Co. v. United States, 234, U. S., 448.

7. **APPEAL AND ERROR**. Assignment of error not referring to portion of record in support thereof not considered.

Assignment of error not referring to any portion of the record containing proof in support thereof will not be considered. (*Post, p.* 230.)

8. **SCHOOLS AND SCHOOL DISTRICTS**. Materialmen protected by contractor's bond though material was diverted from use in performing contract.

Where material was in good faith furnished for use in performance of a contract, the materialmen were protected by the contractor's bond executed under Acts 1890, chapter 182, though material was diverted from use by the contractor. (*Post, p.* 230.)

Case cited and approved: York Lbr. & Mfg. Co. v. McKnight, 139 Tenn., 687.

9 **SCHOOLS AND SCHOOL DISTRICTS**. Claims of materialmen and laborers against contractor's surety held assignable.

Under Thompson-Shannon Code, section 3516, claims of laborers and materialmen against public contractor's surety under Acts 1899, chapter 182, were assignable. (*Post, pp.* 230, 231.)

Code cited and construed: Sec. 3516 (T.-S.).

10. **SCHOOLS AND SCHOOL DISTRICTS**. Laborers and materialmen to bring themselves within protection of contractor's bond must file claims within thirty days after completion or abandonment of work.

Laborers and materialmen to avail themselves of public contractor's bond under Acts 1899, chapter 182, must file claims within thirty days after the completion of the contract, or, in case of a defaulting contractor, within thirty days after the contractor's abandonment of the work. (*Post, pp.* 231, 232.)

Case cited and approved: City of Bristol v. Bostwick, 139 Tenn., 304.

11. **SCHOOLS AND SCHOOL DISTRICTS**. Residue of retained percentage after school board's completion of contract abandoned by contractor belongs to him.

Where school board completed construction of building on contractor's abandonment thereof, the residue of the percentage retained by the school board from the amount due the contractor after the board's completion of the work was not a fund to be applied to the payment of materialmen and laborers, where the contract did not so provide, but belonged to the contractor; the laborers and materialmen having no lien on the funds in the hands of the school board, notwithstanding service of notice of claim under Acts 1899 chapter 182. (*Post, pp.* 232, 233.)

Cases cited and approved: Prairie State National Bank v. United States, 164 U. S., 227.

12. **SUBROGATION.** Assignment to surety of contractor's rights to retain percentage of unsued material, etc., held not valid without notice to school board.

Contractor's agreement in application for bond that surety might be subrogated to contractor's right to retain percentage of unsued material, etc., in case of default, was valid as to unsued material and physical property, but was not good as against retained percentage in hands of school board without notice to school board as against other creditors giving prior notice or attaching fund. (*Post, pp.* 233, 234.)

Cases cited and approved: Clodfelter v. Cox, 33 Tenn., 330; Willis v. Mann Const. Co., 236 S. W., 282; Peters v. Goetz, 136 Tenn., 257.

13. **SUBROGATION.** Contractor's surety on payment of claims against contractor was entitled to be subrogated to claimants' rights against contractor.

Public contractor's surety on payment of duly filed claims of materialmen and laborers was entitled to be subrogated to the claimants' rights against the contractor, and to participate as claimants would have participated in the distribution of the assets of the contractor. (*Post, p.* 234.)

14. **SCHOOLS AND SCHOOL DISTRICTS.** Expenses of school board's cross-bill for benefit of claimants against contractor's bond not allowed out of common recovery or as against bond.

Where a number of materialmen filed separate petitions to recover on a contractor's bond before the school board had filed its cross-

---

Cass v. Smith.

---

bill, for the benefit of all claimants against the bond, the expenses of the cross-bill, including solicitors' fees, should not be allowed out of the common recovery, or as against the bond, since it would be improper to charge the bond, or such materialmen who had filed separate petitions, with the cross-bill, which was rendered unnecessary as to such materialmen; the proper practice in such case being to require each litigant to compensate his own counsel as in consolidated cases. (*Post, p.* 234.)

15. **SCHOOLS AND SCHOOL DISTRICTS.** Cost of horse feed for teams transporting material used in contract not allowed against contractor's bond.

Materialmen held not entitled to recover against contractor's bond for horse feed for teams transporting material. (*Post, pp.* 234, 235.)

Case cited and approved: Carter Co. v. Oliver Hill Const. Co., 143 Tenn., 649.

---

FROM COCKE.

---

Appeal from the Chancery Court of Cocke County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. SAM JOHNSON, Chancellor.

J. STANLEY BARLOW and S. E. MILLER, for complainant.

W. D. McSWEEN, BEN W. HOOPER, GEO. W. GORRELL, AILOR, CARTY & CRAWFORD, O. L. WHITE, JAS. B. WRIGHT, EARNEST TAYLOR, O. M. FAIR and LEE F. MILLER, for defendants.

MR. JUSTICE GREEN delivered the opinion of the Court.

In December, 1916, the Cocke County high school board entered into a contract with J. K. Jaynes & Co., a partnership, to erect a high school building, to cost $25,231.47. Jaynes & Co. gave a bond in the sum of $15,000, with the Fidelity & Casualty Company of New York as surety, the conditions of which bond will be hereafter more particularly set out.

Under the contract the building was to be completed by August 25, 1917. It was not in fact entirely completed until some months later. No claim, however, arises in this case by reason of the delay.

On December 10, 1917, a general creditors' bill was filed against Jaynes & Co., at Johnson City, and a receiver appointed to take possession of the effects of that concern. At this time there was a balance of about $5,000 in the hands of the high school board, retained percentage arising out of the building contract. After the receiver was appointed an agreement was made among the receiver, the high school board, and the surety, whereby the building might be completed by the high school board out of said retained percentage. The building was so completed by the high school board at a cost of about $1,100, leaving in their hands a balance of about $4,000, which would go to the contractor so far as appears from the original contract entered into between the contractor and the high school board.

Shortly after the receiver was appointed at Johnson City, and before the making of the tripartite agreement among the receiver, the high school board, and the surety, the receiver by leave of court, appointing him, filed a bill

in the chancery court of Cocke county, in which he sought to recover the retained percentage aforesaid, and in which he sought a recovery on the bond executed by the aforesaid surety for the benefit of laborers and materialmen, whom it was alleged could not be fully paid out of the assets of Jaynes & Co. This bill contains some other allegations not necessary to notice in this connection, and was allowed to stand by the court as a bill for the benefit of all claimants against the bond and against the fund in the hands of the high school board. Many such claimants filed petitions in the cause. The surety filed certain pleadings in which it challenged the right of the receiver to maintain any such suit. The high school board filed an answer and later filed a cross-bill, the cross-bill being for the benefit of laborers and materialmen protected by the bond.

Other pleadings were filed in the case, adequate to raise the questions which will be discussed in the opinion.

The chancellor directed a reference as to the various claims and a report was filed by the master. There were exceptions to this report, some of which were sustained, and others overruled. A final decree was passed by the chancellor in which he gave the surety the benefit of all the retained percentage which remained in the hands of the high school board after the building was completed. He disallowed some claims, allowed others, gave the solicitors for the receiver a fee out of the funds in the hands of the high school board which he ordered to be paid into court, and taxed the costs of the cause to this fund.

Parties adversely affected by the decree appealed to the court of civil appeals. That court substantially affirmed the decree of the chancellor. Numerous petitions for *certiorari* have been filed in this court assigning errors to the decree of the court of civil appeals.

The case will be more fully presented in the discussion of the various assignments of error.

Before going to these assignments we shall first consider the bond. It was executed as stated above by the contractor, Jaynes & Co., with the Fidelity & Casualty Company of New York as surety, payable to the building committee of the Cocke county high school board in the sum and penalty of $15,000. It referred to the contract between the high school board and Jaynes & Co., and was conditioned as follows:

"Now, therefore, if the above-bound J. K. Jaynes & Co., principal obligors, shall well and truly perform said contract and specifications, in the manner and within the time therein specified and according to the letter and spirit thereof, and shall pay for all material and labor used, then this obligation shall be void; but if said J. K. Jaynes & Co. shall fail to perform said contract in all its parts, and according to the terms, tenor, and specifications thereof, and within the time limit therein fixed, and especially if they shall fail to pay for all material and labor used, and discharge any and all obligations on their part created and outstanding that may or shall constitute an indebtedness upon said structures, or if they shall make default or fail in respect of the performance of any of the terms, conditions or covenants in said contract and specifications, then this obligation shall remain in full force and effect."

We think this bond was dual in its nature like the bond before us in *City of Bristol* v. *Bostwick*, 139 Tenn., 304; 202 S. W., 61. It was intended in part to indemnify the high school board against default on the part of the contractor, and was also intended to protect laborers and materialmen. In so far as the bond undertakes to indemnify

146 Tenn.—15

the high school board it is a common-law bond. In so far as it protects laborers and materialmen it is a statutory bond, containing the exact language of chapter 182 of the Acts of 1899, with an immaterial exception. The statute mentioned requires a bond from the contractor, "to the effect that he will pay for all the materials and labor used in said contract, in lawful money of the United States." Section 1. This bond is conditioned, "and especially if they shall fail to pay for all material and labor used."

The omission of the words "in lawful money of the United States" is of no moment. Such words would add nothing to the bond. The testimony of one of the members of the high school board is to the effect that it was intended to procure a statutory bond.

The high school board is making no claim under the bond. The building has been completed to its satisfaction. The claims urged against the bond are those of materialmen, and, in so far as they are concerned, we think the lower courts properly held this to be a statutory bond, and the rights of the parties must be worked out under chapter 182 of the Acts of 1899.

The obligation in the bond to have discharged "any and all obligations . . . that may or shall constitute an indebtedness upon said structures" must be treated as surplusage. This evidently refers to mechanics' liens, and no such liens can attach to a public building. Such language in the bond will therefore be disregarded under such circumstances. *Hardison* v. *Yeaman*, 115 Tenn., 639, 91 S. W., 1111.

Taking up the surety's assignments of error, it is first insisted that the receiver of the contractor had no right to

bring a suit on the bond for the benefit of the laborers and materialmen protected thereby. We think this objection is well taken. Under chapter 182 of the Acts of 1899, upon giving proper notice of their claims, laborers and materialmen might have themselves sued on such a bond, or the high school board might have sued in the outset for the benefit of such laborers or materialmen. *City of Bristol* v. *Bostwick,* supra.

We do not see upon what ground the receiver, however, can maintain a suit on a bond of which the insolvent firm was principal, and no plausible justification has been suggested.

The surety objects to the allowance of any fee to the solicitors for the receiver out of the funds ordered to be paid into the court herein. This objection is sustained to the extent that no compensation to the receiver's solicitors will be allowed in this case. As will subsequently appear, we hold herein that the receiver is entitled to recover the residue of the retained percentage, and the services of his solicitors herein will be reckoned into their compensation which will be allowed in the main creditors' suit at Johnson City.

The surety's third assignment of error is that the lower courts should have held it released from the obligation of its bond by reason of a supplemental contract entered into between the high school board and the contractor, involving changes in the original plan, which the surety did not consent to. This change was one whereby the basement of the building was made four feet deeper. It necessitated some further excavation, and called for some additional steel. The extra expense was $2,000. Regardless of whether this change affected the rights of the high school board

as against the surety, we are satisfied it had no effect on the rights of the laborers and materialmen.

They were not parties to the alleged change in the contract, and it is very well settled that the surety on a bond like this will not be relieved of the obligation to laborers and materialmen who did not participate in such an alteration agreement between the owner and the contractor.

Considering the rights of such claimants under such a bond and under a similar statute, the supreme court of the United States said:

"In the case of a bond given under a statute such as the act of February 28, 1899, there is no single obligee or creditor. The surety is charged with notice that he is entering into what is in a very proper sense a public obligation, and one that will be relied upon by persons who can in no manner control the conduct of the nominal obligee, and with respect to whom the latter is a mere trustee, and therefore incapable, upon general principles of equity, of bartering away, for its own benefit or convenience, the rights of the beneficiaries. In the light of the statute, the surety becomes bound for the performance of the work by the principal in accordance with the stipulations of the contract, and for the prompt payment of the sums due to all persons supplying labor and material in the prosecution of the work provided for in the contract.

"What would be the result of a change not contemplated in the original contract, as between the District of Columbia, consenting to the change, and the surety company, not consenting thereto, is a question not now before us, and respecting which we express no opinion. But with respect to obligations incurred by the contractor to laborers and materialmen at least so far as their labor and materials are

supplied in accordance with the original contract, it is obvious, we think, that a construction which would discharge the surety because of any change to which the laborers and materialmen were not parties would defeat the principal object that Congress had in view in enacting the statute. If the change were so great as to amount to an abandonment of the contract and the substitution of a substantially different one, so that persons supplying labor and materials would necessarily be charged with notice of such abandonment, a different question would be presented. But, in the case of such a change as was here made—a mere change of position and location of the building, without affecting its general character; involving changes in grading, but having nothing to do with the furnishing of the materials upon which the action is based—it seems to us that the responsibility of the surety to the materialman remains unaffected." *Equitable Surety Co.* v. *United States,* 234 U. S., 448, 34 Sup. Ct;, 803, 58 L. Ed., 1394.

It is next urged by the surety that part of the material for which it was held below was furnished under the supplemental contract just referred to, and under a contract not covered by the bond executed, and that it is accordingly not liable for such material.

As stated above, the supplemental contract involved only an additional expenditure of $2,000, and consisted of some additional excavation to make a deeper basement. There was no change in the general plan or contract. While called a supplemental contract, this agreement can more properly be described as an alteration of the original contract—slight at that. The original contract especially provided that alterations might be made without violating or vitiating the contract, and that the value of such alter-

ations should be agreed upon in writing. All this was in contemplation of the surety when the bond was executed.

The surety further contends that it has been charged with certain material not actually used in the contract, but which was diverted from that use by the contractor. We are not referred by this assignment of error to any portion of the record containing proof in support thereof, and we cannot undertake a general search of the mass of testimony on this account. This assignment of error does not comply with the rules of this court, and is accordingly disallowed. We may add, too, that we are not disposed to give the narrow construction for which the surety contends to chapter 182 of the Acts of 1899. In mechanic's lien suits, if the material is furnished to be used in a building the lien follows, even though the contractor misapplies the material. *York Lbr. & Mfg. Co.* v. *McKnight*, 139 Tenn., 687, 203 S. W., 254. We are inclined to apply the same rule in the administration of this statute where material was in good faith furnished for use in a particular public contract.

The surety also complains that it was charged with certain claims against the bond which had been assigned and insists that these demands were not assignable. We think there is no merit in this contention. Thompson's-Shannon's Code, section 3516.

Passing to the receiver's assignments of error we may observe that some of them are made in behalf of claimants against the bond. From what we have heretofore said it follows that the receiver has no standing to assign error for these parties. Nevertheless, as the claimants themselves have all come into the case by petition or otherwise, and have themselves properly presented their contentions

to this court, we may as well dispose of these matters in this connection and consider all the assignments of error made by the receiver.

The receiver maintains that the bond herein is a common-law bond, and that the claimants are not bound by the provision of chapter 182 of the Acts of 1899, which requires the laborer or furnisher to file with the public officer in charge of the contract, an itemized statement of the amount owed him by the contractor "within thirty days after the contract is completed."

We have hereinbefore given our interpretation of the bond. It is not a common-law bond as to laborers and materialmen. These claims must be filed within thirty days after the principal contract is completed, or, in case of a defaulting contractor, within thirty days after the contractor abandons the work.

We went over this matter in *City of Bristol* v. *Bostwick,* 139 Tenn., 304, 202 S. W., 61, and that case has again reached this court, and we have recently gone over the same ground in an opinion by Mr. Justice BACHMAN filed February 23, 1922, 240 S. W., 774. The language of the statute respecting notice is too plain to be frittered away.

. We think the lower courts correctly fixed the date of receivership as the date of the abandonment of the contract, to-wit, December 10, 1917. We think the correspondence between the architect and the contractor shows that the latter had not permanently abandoned this work prior to that time. In addition to this, materials for which claims are filed were furnished almost up to that time.

We have not space to discuss the proof fully.

This receivership did not prove ineffective like Bostwick's receivership, but marked the end of the activities of

Jaynes & Co. on this contract. In fact we do not see how a firm or a corporation could function as such after its affairs were placed in the hands of a receiver and pending the receivership.

So it results that the receiver's first assignment of error is overruled.

The second assignment of the receiver raises the question of the proper application of the funds in the hands of the high school board after the building was completed. We think the lower courts erred in giving the surety the benefit of this fund by applying it to the payment of laborers and materialmen who had filed their claims in time to recover on the bond.

This application of the fund was no doubt made on some theory of subrogation by way of protecting the surety's rights. It was, however, a misapplication of the equitable doctrine.

There is no question here of the surety being subrogated to the rights of the high school board in this fund. The surety did not complete the contract, but the high school board completed it, and had this balance of $4,000 or more left. Under its contract the high school board has no further claim on said residue of the retained percentage, but it goes to the contractor. *Prairie State National Bank* v. *United States,* 164 U. S., 227, 17 Sup. Ct., 142, 41 L. Ed., 412, and that line of cases, therefore, is not in point.

The high school board is out of the case so far as the surety is concerned. The surety's obligation is to those laborers and materialmen who have seasonably filed their claims. When the surety pays these claimants, it is entitled to be subrogated to the security which said claim-

ants have. This security is nothing but the right of such laborers and materialmen to a pro rata share in the division of the assets of the insolvent firm of Jaynes & Co. The laborers and materialmen have no lien on the funds in the hands of the high school board nor any prior right thereto, even though they served notice of their claims under chapter 182 of the Acts of 1899. Such notice was only effective as to the bond given to secure them. They have no claim against the high school board, and stand merely as simple contract creditors of Jaynes & Co., the insolvent contractor. All this fully appears from the discussion in *Hardison* v. *Yearman,* supra.

In the application made for bond to the surety the contractor agreed that the surety might become subrogated to all the contractor's rights to retained percentage, unused material, etc., in case of default. This amounted to nothing more than as assignment of the contractor's interest in these properties to the surety under the circumstances detailed.

This assignment is good as to unused material and physical property. It is not good, however, as to the retained percentage, a bare chose in action, without notice to the debtor, as against other creditors giving prior notice or attaching the fund.

The lien of the general creditors' bill at Johnson City reached this fund coming to the contractor. It is not shown that the high school board ever had any notice from the surety of this assignment or so-called subrogation. Accordingly the receiver's claim to the balance of the retained percentage is superior to the claim of the surety.

Such has been the law in Tennessee since *Clodfelter* v. *Cox,* 1 Sneed (33 Tenn.), 330, 60 Am. Dec., 157. We went

over all of this question lately in *Willis et al.,* v. *Mann Construction Co.* (Tenn.), 236 S. W., 282. See, also, *Peters* v. *Goetz,* 136 Tenn., 257, 188 S. W., 1144.

The surety upon payment of these duly filed claims is entitled to be subrogated to the claimants' rights against Jaynes & Co. and to participate as they would in the distribution of the assets of that concern when made.

The other assignment of error filed on behalf of the receiver becomes immaterial in view of what we have herein before said.

The high school board complains because the chancellor refused to sustain its cross-bill as a bill for the benefit of all those mentioned therein having claims against the bond, and directed that the cross-bill be treated as a petition under the bill of the receiver. This is not material except for the contention that the expenses of this cross-bill, including solicitor's fees should be allowed out of the common recovery or as against the bond. In this litigation a number of the materialmen had filed separate petitions to recover on the bond before the high school board filed its cross-bill. It would not be proper to charge the bond or these petitioners with the cross-bill which was rendered unnecessary as to said petitioners by said petitions previously filed. Furthermore the allegations of the cross-bill as to the time of notice given by said claimants was somewhat indefinite.

We think the equities of this case require that each litigant should compensate his own counsel, as in consolidated causes.

One petitioner is here complaining because his bill for horse feed for teams that transported material used in this contract was not allowed against the bond. We do not

think there was any error in the action of the lower courts in respect to this matter. The facts are not similar to those appearing in *Carter County* v. *Oliver Hill Const. Co.*, 143 Tenn., 649, 228 S. W., 720, and we do not wish to extend the scope of the ruling in that case.

As above noted, numerous petitioners whose claims against the bond were disallowed by the lower courts have presented their contentions to this court by petition for *certiorari*. These claims do not require separate discussion. What we have said controls the disposition of all of them. The result of our opinion is to affirm the decree of the chancellor and of the court of civil appeals respecting the claimants who are entitled to look to the bond.

Upon full consideration we think the equities of the case will be best subserved by requiring the payment of all the costs out of the funds in the hands of the high school board.

Modified as indicated in this opinion, the decree of the court of civil appeals will be affirmed, and the cause remanded to the chancery court of Cocke county for further proceedings.