MARYLAND CASUALTY CO. *v.* S. S. MCCONNELL, Superintendent, *et al.**

(*Nashville.* December Term, 1923.)

1. **STATES.** State is entitled to preference upon insolvency of its depositary.

   The State is entitled to a preferential payment of its deposit, in the event of insolvency of its depositary. (*Post, p. .659.*)

   Case cited and distinguished: Fidelity & Guaranty Co. v. Rainey, 120 Tenn., 357.

2. **STATES.** Identity of State money not lost by accepting interest.

   The identity of money raised for school purposes, and which is therefore a governmental purpose, is not lost by a deposit thereof in a bank at four per cent. interest; State officials being required by law to deposit funds in solvent banks, and the profit being but incidental. (*Post, p.* 660.)

3. **STATES.** State engaging in business for profit has no higher rights than an citizen.

   Where a State engages in a business enterprise for profit, it has no higher rights than a citizen. (*Post, pp.* 660, 661.)

   Cases cited and approved: Ballentine v. Pulaski, 83 Tenn., 633; Quinn v. Hester, 135 Tenn., 373; Bank of Tennessee v. Dibrell, 35 Tenn., 379; White v. Railroad Co., 54 Tenn., 518.

---

*On right to performance in respect of public funds deposited in bank which subsequently becomes insolvent, see notes in 5 L. R. A. (N. S.) 886; 16 L. R. A. (N. S.) 918 and L. R. A. 1917A, 683.

On payment of entire claim as condition of subrogation, see note in 9 R. L. R. 1600.

The question of right of surety who discharges obligation due to government to be subrogated to priority or preference of latter is discussed in note in 24 A. L. R. 1502.

4. **SUBROGATION.** Surety entitled to subrogation against principal upon payment of indebtedness to creditor.

Where a surety, on the insolvency of a bank, satisfied the entire indebtedness of the bank to the State, it was entitled to be subrogated to the rights of the State with reference to such debt, which right was not affected by being a surety for hire. (*Post, pp.* 661, 662.)

Cases cited and approved: Knaffl v. Bank & Trust Co., 133 Tenn., 655; Fidelity Guaranty Co. v. Bank, 127 Tenn., 720; Cass v. Smith, 146 Tenn., 218.

Case cited and distinguished: Bittick v. Wilkins, 54 Tenn., 307.

5. **STATES.** Statute held not to affect right of State to preferential payment of claim against insolvent bank.

Acts 1913, chapter 20, regulating the liquidation of insolvent banks and distribution of their assets, does not affect the right of the State to preferential payment of any claim it has against an insolvent bank, in absence of a designation, expressed or implied, that the statute was intended to apply to the State. (*Post, p.* 662.)

Acts cited and construed: Acts 1913, ch. 20.

Cases cited and approved: State Highway Dept. v. Mitchell's Heirs, 142 Tenn., 58; Railroad v. Mayor & Aldermen of Union City, 137 Tenn., 491; Mayor & Aldermen of Morristown v. Hamblen County, 136 Tenn., 252.

6. **BANKS AND BANKING.** Superintendent of banks held not to acquire title to assets of insolvent bank when winding up its affairs.

The superintendent of banks does not acquire title to the assets of an insolvent bank when, acting under Acts 1913, chapter 20, he winds up its affairs, in view of section 10 of the act and others, which do not make him a statutory receiver who takes title to the property of the institution in his hands. (*Post, pp.* 662-664.)

7. **BANKS AND BANKING.** Resolution of directors turning assets over to State officer held not a formal assignment.

A mere resolution of the directors of an insolvent bank acting in pursuance to Acts 1913, chapter 20, in turning over the assets of

Maryland Casualty Co. v. McConnell.

the bank to the superintendent of banks, is not equivalent to a
formal assignment and would not transfer title to bank's assets.
(*Post, pp.* 662-664.)

Cases cited and approved: Publishing, Co. v. Car Wheel Co., 95
Tenn,. 669; Hardee v. Wilson, 129 Tenn., 513.

Case cited and distinguished: Relfe v. Rundles, 103 U. S., 222.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—
HON. JNO. R. AUST, Chancellor.

CHAS. C. TRABUE and AVERY HANDLEY, for appellants.

BASS, BERRY & SIMS, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the
Court.

Pursuant to an order of the chancery court and under
authority of chapter 20 of the Acts of 1913, the superin-
tendent of banks on August 27, 1921, took charge of the
Bank of Nashville for the purpose of liquidating its af-
fairs. There was on deposit at that time in the bank
$21,442.15 of the State's educational funds, to the credit
·of Albert Williams, superintendent of public instruction.
This deposit was secured by a bond executed by the com-
plainant in the sum of $21,000, and in favor of the super-
·intendent of public instruction. On October 10, 1921,
the superintendent of public instruction drew a draft upon
the bank for the amount of said deposit, which was not
paid and thereafter made demand on complainant for the
amount of the bond. The complainant paid over to the
superintendent of public instruction the amount of the

bond with four per cent. interest from August 27, 1921. And thereafter the complainant paid to the superintendent of public instruction the additional sum of $442.15, being the entire amount of the deposit.

This bill is filed seeking subrogation by complainant to the alleged right of the State to priority in the distribution of the assets of the bank.

There seems to have been some irregularity in this deposit. It should have been made in the name of the State treasurer, instead of in the name of the superintendent of public instruction. However, it is conceded by all parties that the deposit was State money, and it was so treated by the bank, the surety, and the State officials. The irregularity mentioned is therefore of no importance. A demurrer was filed to the bill resting upon several grounds, and raising the questions which will be noted in the opinion. This demurrer was overruled by the chancellor, and the defendant's first proposition is that the State was not entitled to preferential payment of its deposit. This contention has been settled in this jurisdiction adversely to the defendant, and we have no disposition to disturb our former holding.

In *Fidelity & Guaranty Co.* v. *Rainey,* 120 Tenn., 357, 405, 113 S. W., 397, 409, it was said:

"We are of opinion that the prerogative right of the sovereign to receive payment of fines, forfeitures, taxes, and revenue, and such demands as were due it in its sovereign capacity was a part of the common law transmitted to this State from North Carolina, and that the decree of the chancellor was correct in adjudging priority to the State in the collection of its delinquent revenue on this bond."

Maryland Casualty Co. v. McConnell.

This conclusion was reached after a review of the authorities, and we do not doubt but that it was correct.

It is urged, however, by the defendant that the indebtedness of the bank to the State was an indebtedness by contract and not an indebtedness due to the State in its sovereign capacity. The argument is that this deposit was made by' the State on four per cent. interest, and therefore merely amounted to a loan of money by the State to the bank. And it is said that when the State lends money it loses its sovereign prerogative in the transaction, and puts itself on a plane with an individual, just as when it engages in any other business.

The argument made is plausible in theory, but is impracticable and cannot be accepted.

It is true that when a State engages in a business enterprise for profit, it is to be treated in such matter merely as a citizen, and has no higher rights than a citizen. Such a situation, however, is not apparent here.

The State has on hand from time to time sums of money amounting to millions of dollars. It has no facilities of its own for the keeping and adequate protection of such vast funds. State officers are therefore required by law to deposit these funds in solvent banks, and to obtain from the banks interest on the State balances. The primary purpose of such deposits is to safeguard the money. The interest obtained is an incidental result. The State does not become a money lender by such transactions. The profit, as said before, is but an incident.

Money raised for school purposes by the State is raised for a governmental purpose. *Ballentine* v. *Pulaski,* 83 Tenn. (15 Lea), 633; *Quinn* v. *Hester,* 135 Tenn., 373, 186 S. W., 459. That is to say, such a fund is acquired and

held by the State in its sovereign capacity. The identity of the fund is not lost, and the nature of the State's title is not changed, by the deposit thereof in a bank at four per cent. interest. The prerogative is a vain thing, if it is to be lost by the State's contract with a bank to care for the school funds.

The defendant relies on *Bank of Tennessee et al.* v. *Dibrell et al.,* 35 Tenn. (3 Sneed), 379, and *White* v. *Railroad Co.,* 54 Tenn. (7 Heisk.), 518. In the former case the State took stock in a bank, and in the latter case it backed a railroad enterprise, and in so doing this court held it laid aside its attributes of sovereignty. We do not think these cases in point.

There seems to be no doubt of the right of the complainant to be subrogated to the State's priority in the distribution of the bank's assets. The complainant paid not only the amount of the bond, but made an additional payment to the State, covering the difference between the amount of the deposit and the amount of the bond, and thereby the complainant satisfied the entire indebtedness of the bank to the State. The complainant thus brought itself within the authority of *Knaffl* v. *Bank & Trust Co.,* 133 Tenn., 655, 182 S. W., 232, Ann. Cas., 1917.C, 1181.

There can be no question made upon the right of the surety to subrogation merely because such a surety is a paid surety. *Fidelity Guaranty Co.* v. *Bank,* 127 Tenn., 720, 157 S. W., 414; *Cass* v. *Smith,* 146 Tenn., 218, 240 S. W., 778.

This court has previously defined the rights of a surety as follows:

"A surety, by paying the debt of his principal, becomes entitled to be substituted to all the rights of the creditor,

and to have the benefit of all the sureties which the creditor had for the payment of the debt, without any exception; and is entitled to all his rights to any fund, lien, or equity, against any other person or property, on account of the debt." *Bittick* v. *Wilkins,* 54 Tenn. (7 Heisk.), 307.

Inasmuch as a surety paying the debt of his principal is entitled to all the rights of the creditor, it follows that a surety paying a debt due the State succeeds to the rights of the State with reference to such debt.

"When preference is given to a debt on account of its character, a surety upon paying the debt is entitled to the same preference to which the creditor was entitled, and to the dignity of such claim, and the same rule applies when a State or the United States is a creditor." 37 Cyc., 425.

See, also, 25 R. C. L., p. 1331.

Chapter 20 of the Acts of 1913, regulating the liquidation of insolvent banks and the distribution of their assets, did not affect the right of the State, in our opinion, to preferential payment of any claim it might have against such a bank. Law is presumed to be made for the subject or citizen only, and the sovereign is not reached by a statute unless therein named, or unless by necessary implication. *State Highway Dept.* v. *Mitchell's Heirs,* 142 Tenn., 58, 216 S. W., 336; *Railroad* v. *Mayor & Aldermen of Union City,* 137 Tenn., 491, 194 S. W., 572; *Mayor & Aldermen of Morristown* v. *Hamblen County,* 136 Tenn., 252, 188 S. W., 796.

It is said that the rule declared in 2 Tidd's Practice, 1098, "when goods are *bona-fide* sold, or fairly assigned by the king's debtor to the trustee for the benefit of his creditors, before the teste of the extent they cannot be taken under it," defeats the complainant's recovery herein. It

is insisted that proceeding under chapter 20 of the Acts of 1913, the directors of the bank by resolution turned the assets over to the superintendent of banks, and that such action was equivalent to an assignment by the bank for the benefit of its creditors.

A mere resolution of the directors of the bank was, of course, not equivalent to a formal assignment. Such a resolution would only be authority for such an assignment. The resolution would not transfer title. No assignment was made. The superintendent applied to the court to be appointed receiver.

Unless, therefore, the superintendent of banks acquired title to this bank's assets under chapter 20 of the Acts of 1913, unless he was something more than a mere chancery receiver, the authority relied on by the complainant cannot prevail.

An examination of chapter 20 of the Acts of 1913 indicates that the superintendent of banks, in respect to an institution which he is winding up, has scarcely as much authority as a chancery receiver. He is not a person designated by law and by virtue of the authority of his office to take charge of an insolvent bank. He must first be appointed receiver by the chancery court. He does not get authority to act from the statute, but from his appointment by the court. He is not a statutory successor of the insolvent institution.

In fact, the conception of the lawmakers seems to have been that the superintendent of banks was given fewer powers than an ordinary receiver, for it is provided that— "In any case where the powers and duties of the said superintendent as provided in this act are inadequate to discharge the duties and wind up the affairs, the said su-

perintendent shall make application to the court for further authority, as is now provided in the case of receivers."

It is further enacted that—"The superintendent shall collect all debts due and claims belonging to the bank, and may sell or compound all doubtful debts, and sell all real estate upon such terms as the said chancery court may direct." Section 10, chapter 20, Acts of 1913.

Other provisions of the act might be mentioned, but we have said enough to show that the statute does not make of the superintendent of banks a statutory receiver who takes title to the property of an institution in his hands. See *Relfe* v. *Rundles,* 103 U. S., 222, 26 L. Ed., 337. The superintendent is required to proceed very much as any officer of the chancery court.

"Nor does the appointment of a receiver, in the absence of statute, vest him with any title to the property in controversy, the effect of the appointment being merely to give him the right to the possession of the property without changing the title or creating any lien upon it." High on Receivers, section 5.

To the same effect, see *Publishing Co.* v. *Car Wheel Co.,* 95 Tenn., 669, 32 S. W., 1097, 31 L. R. A., 593, 49 Am. St. Rep., 943; *Hardee* v. *Wilson,* 129 Tenn., 513, 167 S. W., 475, Ann. Cas., 1916A, 94.

The views we have expressed being well supported by decisions of this court, we have not thought it necessary to discuss the authorities from other jurisdictions which counsel for both parties have industriously collected and entertainingly discussed.

We are entirely satisfied with the decree of the chancellor, and the same must be affirmed.