STATE OF TENNESSEE, *ex rel.*, D. D. ROBERTSON, SUPT. OF BANKS, COMPLAINANT, APPELLANT, *v.* BANK OF BRISTOL, DEFENDANT, APPELLEE.*

(*Knoxville*, September Term, 1932.)

Opinion filed November 26, 1932.

---

*As to power of bank superintendent to close insolvent bank, see R. C. L. Perm. Supp., p. 866.

On power of court to order sale, see 23 R. C. L., 98; R. C. L. Perm. Supp., p. 5311.

356

CALDWELL, BROWN & O'DELL, FRANK W. DEFRIECE and COX, TAYLOR & EPPS, for complainant, appellant.

BURROW & BURROW, H. H. HAYES, SR., and ROBERT L. PENNINGS, for defendant, appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The original bill was filed herein on April 30, upon the relation of the superintendent of banks, under sections 5965 et seq. of the Code, against the Bank of Bristol, seeking to administer the affairs of that concern as an insolvent institution. The superintendent of banks was duly appointed receiver for the defendant corporation and proceeded with the liquidation of its affairs.

On July 20, 1932, a petition was filed herein by three gentlemen styling themselves as trustees, claiming to represent two-thirds of the depositors of the Bank of Bristol in number, owning 80 per cent of the deposits in amount. The petition submitted a plan of reorganization through the medium of a sale of the assets of the bank— there being no statute in Tennessee providing for a reorganization, strictly speaking, of the affairs of an insolvent bank. The plan put forward contemplated the sale of the bank's effects to trustees, to be later transferred to a trust company to be brought out. The de-

positors assenting to the plan were to receive interest-bearing certificates of indebtedness from the trustees or from the trust company payable over a period of years. The dissenting depositors were to be paid their *pro rata* share of the sale price to be secured by a lien on the assets turned over to the trustees or to the trust company. All depositors were to be given an opportunity to participate in the so-called reorganization. It is not necessary to go further into the details of this plan at present, since, as will hereafter appear, the condition of the record does not justify any determination of the feasibility of the plan at this time. We are not sure, moreover, that we quite understand all the details of the scheme.

Amendments to this petition were subsequently filed, in which it appeared that the superintendent of banks opposed the plan. That official moved to strike the petition and also filed a demurrer thereto. Likewise certain of the depositors of the bank filed a petition herein asking leave to intervene and leave to move to strike the petition, setting out to some extent the reasons for their opposition.

A number of affidavits were offered from bankers, business men, and others in support of the desirability and practicability of the proposition advanced. Objections were taken by the superintendent of banks to the hearing of these affidavits prior to the disposition by the court of the demurrer and motions to strike. These objections were overruled and the superintendent of banks then filed a sworn answer controverting the legality and propriety of any such disposition of the assets of the bank as was sought.

Notwithstanding the objections to the affidavits as aforesaid, the chancellor heard the whole matter to-

gether, overruled the demurrer and motions to strike and, passing on the merits of the plan, proceeded to approve it and directed a preliminary appraisal of the value of the assets of the bank by commissioners he appointed. The superintendent of banks and the dissenting depositors prayed and were granted an appeal at this stage of the proceedings.

It is assigned for error in this court that the chancellor improperly undertook to pass on the merits of the scheme of reorganization proposed, prior to passing on the demurrer and on the motions to strike, and that he passed on the merits of the proposition without giving to the superintendent of banks and the dissenting depositors any sufficient opportunity to be heard.

As we understood counsel for the petitioners, they conceded at the bar of this court that this assignment of error was well made. Obviously it is well made. The plan proposed is novel and the dissenting depositors insist that it will be detrimental to their interests. In this contention they are joined by the superintendent of banks. No such plan should be sanctioned without a full hearing and after full investigation.

The principal debate here has been with reference to the power of the chancery court to interfere with the liquidation of an insolvent bank by the superintendent of banks pursuant to authority given him in chapter 20 of the Acts of 1913, Code sections 5939 et seq.

Upon his appointment as receiver of an insolvent bank, the superintendent of banks is required to take possession of the institution and is authorized to collect the moneys due to the bank and to do such other acts as are necessary to conserve its assets and business and to proceed with the liquidation of the affairs thereof and

"shall collect all debts due and claims belonging to the bank, and may sell or compound all doubtful debts, and sell all real estate upon such terms as the said chancery court·may direct. Code, section 5973.

The superintendent of banks is likewise authorized, under certain circumstances, "to sell all the assets of such bank to any solvent existing bank at such price as the superintendent may consider a fair and reasonable value for all such assets, allowing such purchasing bank to assume the full amount due all creditors of the liquidating bank and paying the remainder of the purchase price, if any, to such liquidating bank." Code, section 5974.

Other sections of the Act of 1913 and of the Code provide for the doing of various things by the superintendent of banks in the liquidation of the affairs of a bank taken over by him.

It is urged by the superintendent of banks that the manner of liquidation which he is authorized and directed by the statute to pursue constitutes the exclusive method of liquidation permissible under the laws of Tennessee; that chapter 20 of the Acts of 1913, carried into the Code, was designed to cover the whole matter of the regulation of state banks and of the winding up of such banks when they became insolvent, and that the chancery court is without authority to interfere with the superintendent of banks pursuing his duties as a liquidating agent in conformity with the statute.

This argument is plausible and we are referred to the federal statute and to statutes of other states regulating the liquidation of insolvent banks which have been construed as providing exclusive methods for such liquidation. This construction cannot, however, be given to our statute.

Section 5965 of the Code provides that in certain contingencies "it shall be the duty of the superintendent to file a petition in the chancery court having jurisdiction of the property of the said institution requiring it to show cause within five days why it should not be adjudged to be and administered as an insolvent institution."

Section 5969 of the Code is in these words:

"The chancery court taking jurisdiction of any bank, shall appoint the superintendent of banks as receiver for the said bank, under the orders and direction of the court, it being provided that in any case where the powers and duties of the said superintendent as provided in this article are inadequate to discharge the duties and wind up the affairs, the said superintendent shall make application to the court for further authority, as is now provided in the case of receivers. It being further provided that the said superintendent shall receive no other compensation for his personal services rendered as such receiver than that provided for in his salary as superintendent."

The sections of the Code above quoted direct the filing of a petition in the chancery court having jurisdiction of the property of the bank. They authorize the chancery court, upon a proper petition, to take jurisdiction of any bank. The court is directed to appoint the superintendent of banks as receiver for any bank of which jurisdiction is taken, but it is expressly provided that the superintendent shall act as receiver "under the orders and directions of the court." It is also enacted that where the powers of the superintendent under the statute are inadequate, "the said superintendent shall make ap-

plication to the court for further authority, as is now provided in the case of receivers.''

To say that the affairs of an insolvent bank can only be wound up as the superintendent is authorized to wind them up under the statute entirely ignores the provisions of section 5969 of the Code above quoted. That section expressly recognizes that the powers of the superintendent may at times be inadequate. He is accordingly directed to apply to the court for further authority under such circumstances. The superintendent is a receiver *under the orders and directions of the courts*. The various provisions of chapter 20 of the Acts of 1913, carried into the Code, give to the superintendent in some ways more authority than is possessed by an ordinary chancery receiver. At the same time these provisions, in some ways, limit his authority to a narrower scope than the authority of an ordinary chancery receiver.

██ We have heretofore considered the status of the superintendent of banks acting as receiver for an insolvent institution by appointment of the chancery court under chapter 20 of the Acts of 1913. This question arose in *Maryland Casualty Co.* v. *McConnell*, 148 Tenn., 656, in another aspect. We concluded in that case that the superintendent of banks, so acting under such appointment, was little more, perhaps something less, than a mere chancery receiver. We are satisfied that this conclusion was sound. The U. S. Circuit Court of Appeals for the second circuit, considering chapter 20 of the Acts of 1913, independently of any expression from this court, reached the same conclusion as to the status of the superintendent of banks acting as receiver for an insolvent banking institution. *McConnell* v. *Hubbard*, 272 Fed., 961.

362

■ The chancery court having, to employ the statutory terms, taken jurisdiction of this bank, the assets of the institution being in the hands of an officer acting under the orders and directions of the court, we think the court can deal with the assets of such institution as it could deal with the assets of any other insolvent institution being wound up under its jurisdiction, so long as the orders of the court do not conflict with any statutory provision.

■ It is well settled that a court with power to appoint a receiver for an insolvent corporation has power in a proper case to order the receiver to sell the corporate property, and to direct a sale upon such terms as the court may deem proper and advantageous to the administration of the affairs of the corporation. This is a matter within sound judicial discretion. A sale should not be ordinarily directed unless it is necessary for the adequate protection or for the best interests of the parties. Where the prime object of the receivership is to accomplish a distribution of the assets of the corporation among those entitled thereto, a sale will be more readily ordered than in other cases. High on Receivers (4 Ed.), section 492, 14A C. J., 1006 et seq.; 53 C. J., 203 et seq.; 16 R. C. L., 11; 23 R. C. L., 98.

■ We find nothing in chapter 20 of the Acts of 1913 carried into the Code which limits the authority of the court in a matter such as the one before us. The superintendent of banks, on his own account, must proceed as required by the statute. The statute, however, plainly recognizes the power of the court to sanction different procedure in the winding up of the affairs of an insolvent bank. It results, therefore, that the cause must be remanded to the court below for further proceedings, If

upon the full hearing, the chancellor deems it necessary to the best interests and adequate protection of the depositors of this bank that a sale of its assets should be ordered, it is within the power of the chancellor to direct such a sale. The interests of the stockholders of the bank are likewise to be considered, although secondarily. Depositors assenting to the plan proposed or adopted may be paid for their interests according to any agreement they may make. Payment for the interests of nonassenting depositors must be provided for in a reasonable time and such payment amply secured. And of course the interests of nonassenting stockholders must be calculated as upon a fair price given for the assets of the bank.

Modify and remand. Costs of this court will be taxed to petitioners.