STATE ex rel. v. AMERICAN SURETY CO. OF NEW YORK
et al.—120 S. W. (2d) 967.

Eastern Section.   July 2, 1938.

Petition for Certiorari denied by Supreme Court, October 22, 1938.

Roy H. Beeler, Attorney-General, and Johnson & Johnson, of Knoxville, for appellants.

Lindsay, Young & Atkins, of Knoxville, for appellee.

McAMIS, J.  This suit was filed by the State of Tennessee on July 2, 1935, for the use and benefit of itself and other parties beneficiary under three bonds executed by Frank L. West, former Clerk and Master of the Chancery Court of Knox County.

West was inducted into office on January 3, 1929, and on the same date executed three bonds with the American Surety Company of New York as surety totalling the sum of $65,000.  All three of these bonds were captioned "Clerk and Master's Official Bond;" but when spread upon the minutes of the Chancery Court they were distinguished as "Clerk and Master's Official Bond," "Clerk and Master's Revenue Bond" and "Clerk and Master's Special Bond."

As so designated, the amounts of these bonds, respectively, were $10,000, $5,000 and $50,000.  The official bond and the revenue bond, executed pursuant to Sections 652 and 653 of the Code, were written and conditioned without any material variation from the statutory requirements embodied in these two sections of the Code.  The liability of the surety under these two bonds, as fixed by the Chancellor's decree, has been paid into court.  Both parties have appealed from the decree of the Chanellor in respect to the third bond in the sum of $50,000.  The appeal of the State of Tennessee, complainant below, from that portion of the decree which limits the liability of the surety to defalcations of the principal falling within the purview of the $5,000 and $50,000 bonds, as written, involves a construction of the bond in the light of certain statutory provisions and will be first considered.

By complainant's first assignment of error, it is insisted that the $5,000 bond, held by the Chancellor to be a bond for revenue under Code Section 653, is an official bond in the sense of the statutes of the State of Tennessee, and that the Chancellor erred in limiting the recovery upon it to defalcations arising from the collection of taxes on suits, fines and forfeitures.

Section 653 requires every clerk of a court, before entering upon the duties of his office, to execute a bond in the sum of $5,000, conditioned to account for and pay over all moneys arising from taxes on suits, fines, and forfeitures.  As a penalty for failure to do so, it is provided that the clerk shall become liable for a sum equal to treble the taxes, fines, and forfeitures which have come, or ought to have come, to his hands.

The bond in question is conditioned as required by the statute and was manifestly executed by the Clerk and Master and accepted by the Chancellor as a revenue bond.  We find nothing to support complainant's insistence in respect to it except that it was captioned Clerk and Master's Official Bond.  As we have indicated, all three of the bonds executed on the date of the appointment of the Clerk and Master were so captioned and designated but when spread upon the minutes were differentiated and treated as (1)

Clerk's Official Bond, (2) Bond for Revenue and (3) Special Bond as Commissioner and Receiver, as contemplated by Sections 652, 653 and 654 of the Code.

Bearing in mind these statutory provisions, the fact that the bonds were all executed on the same date and, when approved by the Chancellor, were treated as being in compliance with the statutory provisions, we think the term "Official Clerk and Master's Bond" appearing as a caption on the $5,000 and $50,000 bonds was used generically in the sense that they were bonds executed by a public official. The Chancellor adopted this view and we think correctly so. The first assignment of error is accordingly overruled.

By the second assignment of error it is insisted in behalf of complainant that the Chancellor erred likewise in not holding the $50,000 bond a statutory official bond and, as such, liable for the general defalcations of the principal.

Section 654 of the Code provides:

"Special bond as commissioner and receiver.—The several courts may also require their clerks to give bonds, with good security, in such sum as the court may deem sufficient to cover property or funds which may at any time come to the hands of such clerks as special commissioners or receivers, by appointment of the court or any judge thereof."

The condition of the $50,000 bond is that it is "to be void if said Frank L. West, Clerk and Master, shall well and truly account for and pay over under the orders of the Chancery Court of Knox County, Tennessee *all fees arising from the sale of property or otherwise that may come into his hands as Clerk and Master*, or by reason of being appointed special commissioner or receiver by appointment of the court or any judge thereof . . ." (Italics ours.)

It is to be observed that, while the bond is conditioned as required by the statute, the condition of the bond which we have italicized has been superadded. The Chancellor gave effect to this extrastatutory condition of the bond as a common law bond limited only by its terms.

It is insisted that Sections 1823 and 1833 of the Code are to be read into the bond and that when this is done the surety becomes liable for the general defalcations of the principal to the full extent of the bond.

The first of these Sections provides as follows:

"1823. Form, condition, and requisites of official bonds.—The bonds of all public officers, required by law to give bond shall, unless it is otherwise provided, be made payable to the state, with such sureties as the officer or court required to approve the same is satisfied are sufficient, and conditioned, in all cases in which a different condition is not prescribed, faithfully to discharge the

duties of such office during the time he continues therein, or in the discharge of any part thereof."

By Section 1833, it is provided:

"1833.  Obligation of bond.—Every official bond executed under this Code is obligatory on the principal and sureties thereon—

"(1) For any breach of the condition during the time the officer continues in office or in the discharge of any of the duties of such office.

"(2) For the faithful discharge of the duties which may be required of such officer by any law passed subsequently to the execution of the bond, although no such condition is expressed therein.

"(3) For the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by the failure to perform, or the improper or neglectful performance, of the duties imposed by law."

Sections 1823 and 1833, dealing with bonds of public officials generally, and Sections 652, 653 and 654, dealing particularly with bonds of clerks of the courts of the State, are to be construed pari materia.  To avoid a repugnancy which might otherwise exist between Section 1823 and other statutes setting forth the requirements applicable to particular officers, the general provisions of section 1823, by express terms, are to apply only in case it is not otherwise provided; and, unless a different condition is prescribed, it is provided that the bonds of all public officers shall be conditioned upon the faithful discharge of the duties of office.

The bond under consideration, though containing a condition not embraced in Section 654, contains a condition which is prescribed by this Section of the Code and was given and accepted under it. Hence, a different condition was prescribed in reference to it and the liability of the surety is to be determined without reference to Section 1823.

We see no ground for complainant because Section 1833 was not construed by the Chancellor to make the surety liable for the general defalcations of the principal.  (1)  The Chancellor awarded a recovery for the breach of the conditions of the bond, both statutory and common law, as it was written, (2) there was no law  passed subsequently to the execution of the bond making it applicable for that reason, and (3) the decree of the Chancellor does not operate  to repel anyone injured either "by any wrongful act committed under color of his office" or "the improper or neglectful performance, of the duties imposed by law."  The remedy of such persons not falling within the scope of either Sections 653 or 654 is upon the Clerk's official bond prescribed by Section 652.  Section 1833 does not, we think, apply, in any aspect, to the situation presented by this record.  We are also of opinion other

Sections of the Code, relied upon by complainant, including Sections 1836, 1837, 1838 and 1839, do not have the effect of extending the condition of the bond to make it a general "honesty" bond.

The insistence is also made in behalf of complainant that Section 654 of the Code, making bonds executed thereunder conditioned upon the principal accounting for all "property or funds" which may at any time pass into the hands of the clerk as special commissioner or receiver, must be read into the common law obligation embraced in the bond under consideration, thus substituting the words "property or funds" for the word "fees," and making the common law obligation conditioned upon the principal accounting for "all property or funds arising from the sale of property or otherwise that may come into his hands as Clerk and Master." It is insisted that the rule of strictissimi juris, applicable to paid sureties, should be applied to sustain this insistence.

The common law condition of the bond is free of ambiguity and it is unnecessary to apply rules of construction to determine its meaning. If the bond is to be treated as purely statutory, the full liability of the surety is discharged when the principal accounts for all property or funds coming into his hands as special commissioner or receiver. If, as the Chancellor correctly held, the bond is both a common law and a statutory bond, its separate features should be construed as distinct and independent contracts. The statutory obligation requires the surety to respond to the requirements of the statute. The common law obligation, being expressed in unambiguous language, will be construed according to the terms which the parties have used, in their plain and ordinary sense. Pacific Mut. Life Ins. Co. v. Hobbs, 168 Tenn. 690, 80 S. W. (2d) 662.

We think the Chancellor correctly limited the liability of the surety to all fees from the sale of property or otherwise which came into the hands of the principal and property or funds which he received as special commissioner or receiver and for which he failed to account. We find nothing in the case of U. S. Fidelity & Guaranty Co. v. Rainey, 120 Tenn. 357, 113 S. W. 397, opposed to this conclusion. Further reference will be made to the holding in that case in disposing of assignments of error made in behalf of defendant. We find the assignments of error in behalf of complainant without merit and they are accordingly overruled.

The defendant, American Surety Company, has appealed from so much of the decree of the Chancellor as awarded judgment against it for the sum of $11,838.46 with interest, representing $6,004.12 excess fees and commissions, $1,068.50 officers' costs for serving tax subpoenas and $4,764.84 due witnesses and officers. Defendant was adjudged liable for these defalcations under the extra-statutory provisions of the Clerk and Master's Special Bond.

Assignments one to six, inclusive, are directed to the proposition that the Clerk and Master's Special Bond, being statutory, the liability of the surety should have been limited to "property or funds" which came into the hands of the principal as special commissioner or receiver and for which he failed to account and that the Chancellor erred in holding it liable for fees collected by the Clerk and Master to the extent adjudged by the Chancellor under the theory that extrastatutory condition of the bond constituted a common law obligation of the surety.

Numerous cases from a number of states, holding the surety liable only for defalcations covered by the statutory conditions and that any other conditions actually written into the bond must be disregarded as surplusage, are cited. It is insisted that the holding in U. S. F. & G. Co. v. Rainey, supra, to the contrary does not support the Chancellor's opinion in this respect because the holding in that case is obiter dictum and is not supported by the cases cited in the opinion.

In that case, the court had under consideration the liability of a surety upon a revenue bond executed pursuant to Section 403 of Shannon's Code, now Section 653, requiring the Clerk to execute a bond in the sum of $5,000, conditioned to account for and pay over all moneys arising from taxes on suits, fines, and forfeitures. Rainey's bond, in addition to the statutory condition, also contained a condition that he should "truly and faithfully perform all the duties of the office of circuit court Clerk" [page 399]. The Chancellor disregarded the latter condition of the bond making it a general "honesty" bond and rendered a decree representing only the amount of State and County taxes on litigation and State taxes for the redemption of property. The Supreme Court, in an opinion by Justice McAlister, reversed the decree of the Chancellor, the court holding that the superadded condition that Rainey should truly and faithfully perform all the duties of his office constituted a common law obligation of the principal and surety. It was held that the surety must respond upon both the common law and the statutory obligations expressed in the bond.

After citing cases supporting this conclusion, the court observed:

"We are aware that there is another line of cases which hold that bonds executed in the course of judicial proceedings in excess of the conditions prescribed by statute are only enforceable to the extent of the statutory requirements."

Former holdings of the Supreme Court so holding were then cited and distinguished in the following language:

"It may be said in respect of the last class of cases that the bonds were wholly without consideration, since the parties were entitled to an appeal upon executing a bond for costs and damages as required by the statute. Hence there was no consideration for

the superadded conditions, and for that reason such bonds were nonenforceable. In the present case, however, there was a consideration for the bonds executed by Rainey and the Fidelity Company as his surety. The revenue for which Rainey defaulted went into his hands upon the faith of bonds executed by him in excess of the requirements of the statute, and the surety company was paid a premium for the indemnity guaranteed by it. The bond executed by Rainey was voluntarily executed, upon sufficient consideration, and is clearly enforceable as a common-law bond to the full amount of the penalty prescribed.''

This reasoning is supported by a number of cases from other states cited in the opinion, including United States v. Hodson, 10 Wall. 395, 409, 19 L. Ed. 937, from which the court quoted as follows:

''But where it (bond) is voluntarily entered into, and the principal enjoys the benefits which it is intended to secure, and a breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such a defense. In such cases there is neither injustice nor hardship in holding that the contract as made is the measure of the rights of the government and of the liability of the obligors.''

It is clear from the foregoing that one of the justiciable issues in the case was the liability of the surety under superadded conditions in a statutory bond and the reasoning of the court indicates that the view that the surety is liable upon the superadded common law conditions of the bond as well as under the statutory conditions was adopted and followed after mature deliberation and reflection. We think the Chancellor correctly followed the holding in the Rainey Case and was correct in holding the surety liable upon both features of the bond.

Under assignment of error number four, it is insisted in behalf of defendant that, in any event, the Chancellor was in error in awarding a recovery for fees earned by the Clerk and Master under Section 10692 of the Code, sub-section 51, in the collection of taxes, etc., and, as we understand, now due the County as excess fees.

Sub-section 51 of Section 10692 provides for the payment of two and one-half cents on the dollar to the Clerk and Master ''for receiving and paying over all taxes, fines, forfeitures, and amercements.'' It appears that the Clerk and Master collected sufficient taxes to earn the sum of $1,824.81, but it is insisted that since the taxes were never paid over the Clerk and Master is not entitled to this compensation and hence that the County is not entitled to recover it as excess fees. It is insisted that if the Clerk and Master were suing to recover this compensation, recovery would be denied because he has not completed the service required under the stat-

ute by "paying over" the taxes collected. According to the report of the Master, nothing remained to be done by the Clerk and Master except to issue a voucher for these taxes. Under Code Section 10730, excess fees become the property of the county and it would be a narrow construction, indeed, to deny it recovery for these fees merely because a voucher was never issued for them. The bond in question was not executed to protect the Clerk and Master but those suffering as a result of his defalcations.

■ It is next insisted that the Chancellor erroneously adjudged the surety liable for the sum $1,068.50 representing officers' costs or fees for serving tax subpoenas. It is insisted that this item represents costs and not fees and hence the abstraction of these funds is not covered by the bond. The same insistence is made with respect to $4,765.84 representing fees of witnesses and officers not paid over by the Clerk and Master. The statutes fixing the compensation of sheriffs for executing process (Code, Section 10707) and providing compensation for witnesses attending court under legal process (Code, Section 7652) denominate such compensation as "fees" and we think defalcations in respect to such fees clearly fall within the language of the bond.

■ The Chancellor allowed interest upon the recovery at the rate of ten per cent per annum and it is insisted that this rate, being at variance with the equal and uniform rate of six per cent, violates the Constitution of the State of Tennessee, Article XI, Section 7. Section 1835 of the Code provides that sureties on bonds of public officials shall be liable, in addition to the principal sum, for interest at the rate of ten per cent per annum for the period of delinquency. The same question now raised was made in State v. Fidelity & Deposit Co., 21 Tenn. App. 507, 113 S. W. (2d) 73, and it was there held that the interest provided by this Section is in the nature of a penalty and that the constitutional provision with respect to interest would not apply. It follows that the Chancellor was correct in fixing the rate at ten per cent.

■ Finally, it is insisted that the Chancellor erred in awarding judgment for interest to accrue from December 5, 1934; that under the holding in State v. Fidelity & Deposit Co., supra, a surety is liable only for interest from the date of the filing of the bill where no specific demand has been made prior to institution of suit. The bill was filed July 2, 1935, so that approximately seven months interest is involved under this assignment of error.

It appears that the principal, West, resigned as a result of his defaults on April 2, 1934. On April 6, 1934, the County Judge wrote defendant calling attention to the default in his accounts.

On June 12, 1934, defendant was furnished with an audit of the books in West's office made by State auditors indicating a default of more than $50,000. Other letters, clearly indicating the Coun-

ty's intention of looking to the indemnity furnished by the bonds on which defendant was surety, were written defendant and its attorney, to some of which defendant appears to have been slow in replying.

It further appears that defendant had its auditors check the books of the Clerk and Master. Their audit was completed on December 5, 1934, the date to which the Chancellor referred the allowance of interest, and it likewise showed West in default to the extent of more than $50,000.

Under these circumstances it is clear that defendant had notice of the defaults before the filing of the bill but it apparently made no effort to adjust the loss and the institution of this suit followed. We think it is clear that defendant, having received notice of the loss and having conducted its own audit through which it learned the details and extent of the principal's default, was fully aware of the claim being made under the bonds and is not now in position to contend that no demand was made prior to the filing of the bill. The date fixed by the Chancellor, from the standpoint of defendant, is reasonable and fair.

We find no error in the decree of the Chancellor and it is affirmed with costs.

Portrum and Ailor, JJ., concur.