CITY OF KNOXVILLE *v.* MELVIN F. BURGESS, INC., *et al.*

(*Knoxville,* September Term, 1943.)

Opinion filed November 20, 1943.

414

KENNERLY & KEY, of Knoxville, for New Amsterdam Casualty Co.

R. R. KRAMER and ERMA G. GREENWOOD, both of Knoxville, for Aluminum Co. of America.

CATES, SMITH & LONG, of Knoxville, and BREED, ABBOTT & MORGAN, of New York City, *amici curiae* for Graybar Electric Co., Inc.

WHITAKER, HALL, HAYNES & ALLISON, of Chattanooga, *amici curiae* for Southern Wood Preserving Co.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

City of Knoxville, through a subsidiary, entered into a contract with Melvin F. Burgess, Inc., to construct an extension to the City's electric distribution system at a cost of $200,000. The work was completed and accepted and there remains in the hands of the City a balance of some $19,000 retained percentage.

It appears from a bill filed by the City that a number of persons furnishing material for this work have not been paid by the contractor. It further appears that the contractor executed a bond with New Amsterdam Casualty Company as surety to secure performance and to indemnify the City against default and also to protect laborers and materialmen. And later the contractor undertook to assign its claim for the retained percentage to this surety.

Under these circumstances the City filed a bill, in the nature of a bill of interpleader, making the contractor, the surety and the several unpaid creditors defendants. One of the creditors, Aluminum Company of America, answered the City's bill and filed a cross bill against the Burgess Company and the surety seeking a recovery against the two for the amount of its unpaid claim, some $9,000. The Surety Company demurred to this cross bill, its demurrer was sustained, and the cross bill dismissed outright. From this decree of the chancellor the surety has prosecuted an appeal to this court.

The chancellor regarded as decisive of the merit of the cross bill the question as to whether the bond executed by the surety was a statutory bond or a common law bond. He was of opinion that in so far as the laborers and materialmen were involved the bond was a statutory

bond under the laws of Tennessee and that suit thereupon was barred by Code, sec. 7959. On the hearing before this court the principal debate has been with respect to the nature of the bond.

Code, sec. 7955, provides that "No contract shall be let for any public work in this state, by any city, county or state authority, until the contractor shall have first executed a good and solvent bond to the effect that he will' pay for all the labor and materials used by said contractor, or any immediate or remote sub-contractor under him, in said contract, in lawful money of the United States. . . . "

Section 7958 provides that any laborer or furnisher of labor or material to said contractor, or to any immediate or remote sub-contractor under him, may bring an action on said bond and have recovery in his own name, etc.

Code, section 7959, is in these words:

"Several persons entitled may join in one suit on such bond, or one may file a bill in equity in behalf of all such, who may, upon execution of a bond for costs, by petition assert their rights in the proceeding; provided, that action shall be brought or claims so filed within six months following the completion of such public work, or of the furnishing of such labor or materials."

The Aluminum Company concedes herein that its cross bill was filed more than six months following the completion of this public work or of the furnishing of materials by it. Hence the chancellor's decision.

In view of the allegations in its cross bill it is difficult to see how the Aluminum Company can maintain that the bond it here sues on, in so far as it affects laborers and materialmen, is a common law bond.

Code, section 7956, provides that the furnisher of labor or material, to secure the advantage of the statute, shall

"within ninety days after the completion of such public work, give written notice by return-receipt registered mail, or by personal delivery, either to the contractor who executed the bond, or to the public official who had charge of the letting or awarding of the contract." The cross bill avers that cross-complainant believed this work to have been accepted by the City on November 22, 1940, and that "cross-complainant gave notice to the New Amsterdam Casualty Company as required by statute in Section 7956 of the Code of Tennessee for 1932, by sending a registered letter to the surety under date of November 19, 1940, notifying the surety of the amount of the claim and substituting (submitting) an itemized statement to support such claim."

It was set out in the cross bill that cross-complainant had been previously informed that the affairs of the original contractor were in the hands of the surety and that the surety was completing all unfinished contracts. The cross bill continues, "It is alleged that this notice was within ninety days from the completion of the contract, or of the furnishing of materials by this cross-complainant, and that notice to the surety under the above circumstances was notice to the contractor as required under Section 7956, and within the time, and in the form and manner required in said statute."

The cross bill then sets out certain negotiations that transpired between cross-complainant and the surety and charges that certain action of the surety "was a deliberate attempt to forestall your cross-complainant from filing suit and that such action amounted to a waiver of Section 7959 of the Code of Tennessee requiring suit to be instituted within six months following the completion of such public work or the furnishing of such labor or materials."

418

In another paragraph of the cross bill a certain statement of an officer of the surety is mentioned and it is averred that such a statement "constitutes a waiver of Section 7959 of the Code of Tennessee regarding the filing of suit within six months from the completion of the work or the furnishing of the material."

In still another paragraph of the bill a different act of the surety is charged "as a waiver of its rights to the fund in the hands of the City of Knoxville and a waiver of Section 7959 of the statutes of Tennessee."

Thus obviously the theory of the cross bill was that in so far as materialmen were concerned the bond sued on was a statutory bond and the rights of materialmen with respect to the bond were controlled by the Tennessee statute. Upon such pleadings as the foregoing the cross-complainant is scarcely entitled to recovery against the surety on the theory that the bond in suit is a common law obligation as to materialmen. Nevertheless we consider this contention.

 It was virtually conceded in argument that the bond in question was dual in its nature. That is, in one aspect it protected the City, in another aspect it protected laborers and materialmen. Bonds of this nature have been before this court previously and the obligations to the governmental agency on the one hand and to laborers and materialmen on the other have been treated as distinct and separate obligations although combined in one paper. *City of Bristol* v. *Bostwick,* 139 Tenn., 304, 202 S. W., 61; *Cass* v. *Smith,* 146 Tenn., 218, 240 S. W., 778. The obligation to the governmental agency may be subject to the common law and the obligation to laborers and materialmen may be subject to the statute if the latter obligation is only such an obligation as is required by the statute. *Cass* v. *Smith, supra.*

An examination of the bond before us in so far as laborers and materialmen are concerned readily demonstrates that the surety undertook no other or further obligation than is required by our statute. In the bond the surety undertook to make good any failure of the principal in failing to ".promptly make payment to all persons supplying labor and materials for use in the construction of the Project contemplated in the Construction Contract and any amendments thereto."

It is also provided in the bond that it was made for the benefit of all persons furnishing material or performing labor on account of the construction to be performed under the contract or any amendments and that such persons were made obligees with the right to sue just as if their names were written in the instrument.

The liability to laborers and materialmen thus assumed by the surety is no whit greater than that imposed by the statute. The statutory bond as construed in *Cass v. Smith, supra,* was held to cover material furnished for use in the contract and it was held that an immaterial divergence from the language of the statute did not alter the nature of the bond so long as the obligation remained the same as that imposed by the statute.

Cross-complainant relies on a line of authorities which hold that when a bond is conditioned more broadly than the statute requires, a recovery on it may be had as upon a valid common law obligation. That is, when the provisions go beyond the statutory requirements they may be given effect as common law obligations. See *State ex rel. v. American Surety Co.,* 22 Tenn. App., 197, 120 S. W. (2d), 967, and cases therein cited. It is insisted that the provisions of the bond before us as to laborers and materialmen do go beyond statutory requirements in several particulars.

It is submitted by counsel that the Tennessee statute requires a bond for laborers and materialmen in a sum proportioned but not equal to the amount of the contract, according to the formula set out in Code, section 7955, whereas this bond is for the full amount of the contract. As we pointed out in *City of Bristol* v. *Bostwick, supra,* however, a bond like this is not alone for the protection of laborers and materialmen but for the identity of the city in case of the contractor's default. Being for the two-fold purpose, naturally the bond in amount exceeds the statutory amount that would have been required on account of laborers and materialmen.

*Amici curiae,* who filed briefs herein, point out that under Code section 7955, "In the event the contractor who has executed the bond gives notice, in writing, by return-receipt registered mail, to any laborer or furnisher of material or to any such immediate or remote sub-contractor, that he will not be responsible therefor, then, such person who thereafter furnishes such material or labor shall not secure advantage of the provisions of this section, for materials furnished or labor done after the receipt of such notice", and it is said the bond contains no such provision and is not therefore a statutory bond. Why should the bond contain such provision? As we have above noted, the statute does not prescribe the language to be used in the bond and this statutory right is given to the surety whether the bond contains any such provision or not. Such provision would be entirely useless.

It is said that the bond in suit contains provision for amendments of the construction contract and for the continued liability of the surety after the amendments and after extensions of time of performance by the owner, etc. We held in *Cass* v. *Smith, supra,* that the obligation

of the surety to laborers and materialmen were not affected by alterations or amendments of the contract agreed upon between the contractor and the owner. In that case the court said of laborers and materialmen at page 228 of 146 Tenn., at page 781 of 240 S. W.:

"They were not parties to the alleged change in the contract, and it is very well settled that the surety on a bond like this will not be relieved of the obligation to laborers and materialmen who did not participate in such an alteration agreement between the owner and the contractor."

In the foregoing the court followed *Equitable Surety Co.* v. *United States,* 234 U. S., 448, 34 S. Ct., 803, 58 L. Ed., 1394, and such is the general rule. Upon a consideration of many cases cited, the editor of a Note in 77 A. L. R., 195, expressed himself thus:

"The dual nature of public contractors' statutory bonds conditioned both for the faithful performance of the contract and for the payment of laborers and materialmen has been explained at another place. See subd. IX a, *supra.* As there shown, the rights of laborers and materialmen are independent of the rights of the obligee in the bond, and are the same as though the two undertakings were embraced in separate instruments. In accordance with these principles, it is held that the right of laborers and materialmen to recover against the surety on such a bond cannot be defeated by any act or omission of the obligee named in the instrument, not authorized or participated in by the laborers or materialmen, although the conduct or default is such as would release the surety from liability to the obligee."

It is further urged that because this bond contains no provision for notice of claim after completion of the work or furnishing of labor or material and because it

contains no period of limitation for suit, it cannot be regarded as a statutory bond. The statute does not prescribe any form in which the bond for the protection of laborers and materialmen is to follow. If this bond had contained a provision for notice and a provision limiting the time for suit, such provisions would only be effective in so far as they coincided with the statutory requirements as to notice and time of suit. It has been held in a number of cases where the statute was silent as to the terms of the bond, that in case of a conflict between provisions of the bond and provisions of the statute as to the time limits prescribed by the statute, the statutory limits would prevail. *Smith & W. Co.* v. *Carlsted,* 165 Minn., 313, 206 N. W., 450; *Lawson* v. *County Board of Pub. Instruction,* 118 Fla., 246, 159 So., 14; *United States Fidelity & G. Co.* v. *Tafel Electric Co.,* 262 Ky., 792, 91 S. W. (2d) 42. The Kentucky case grew out of a Tennessee contract. The court held that it was governed by the Tennessee statute and that although the bond provided a longer time in which suit might be brought than did the statute, nevertheless the short limitation of the Tennessee statute controlled and barred the suit.

The provision in the bond before us that laborers and materialmen were to be considered as obligees of the bond with the right to sue thereon added no greater obligation than the statute imposed and did not change the character of the bond as to laborers and materialmen.

■ For the reasons stated we think the chancellor correctly held that in so far as laborers and materialmen were concerned the bond herein sued on was a statutory bond.

It is argued, however, that Code, sec. 7959, heretofore set out is in the nature of an amendment to previous

legislation. That prior to the enactment of section 7959 our statute contained no provision for the several persons entitled thereunder to join in one suit on the bond and that the concluding portion of the section "provided, that action shall be brought or claims so filed within six months", etc., relates only to suits in which several individuals join and not to suits by separate individuals.

■ For this proposition we are referred to the general rule that a proviso is generally to be construed in connection with the section of which it forms a part and confined to that section. *Frix* v. *State,* 148 Tenn., 478, 256 S. W., 449; Lewis' Sutherland on Statutory Construction, Vol. 2, p. 352. This rule, however, is not applicable where a contrary intent is plainly to be inferred. There would be no sense in limiting the time in which a joint suit might be brought by several laborers or materialmen to six months and allowing such parties six years in which to bring suit if they file separate actions. Such discrimination would be hard to sustain.

■ ■ Section 7959 originated in the Code of 1932. It is not to be regarded as an amendment to an earlier act but as a part of the Act of 1931 which promulgated the Code of 1932. Obviously the purposes of the section were to prevent a multiplicity of suits and to fix a short period of limitation in which suits of this nature might be brought. Statutes for the protection of laborers and materialmen on public works are in force in most of the States and these statutes quite generally contain provisions similar in both aspects to the provisions of section 7959. Such provisions are contained in the federal statute providing for bonds to secure laborers and materialmen on government works. 40 U. S. C. A., section 270b.

424

Our attention is called to a decision of the New York Supreme Court, affirmed without opinion by the Appellate Division, wherein a suit was brought on the bond before us in New York by one of the materialmen against the surety. It was held in that case that the bond was a common law bond. It does not appear from the opinion of the trial judge that the contract entered into between the City and the contractor with respect to which this bond was written was before the New York court. That contract particularly sets out that all provisions of the bond should be complete and in full accordance with statutory requirements. That the bonds should be furnished by a surety company authorized to do business in the State of Tennessee and should be executed by an agent resident in that State.

Regardless of the New York decision, however, and with due respect, under previous decisions of the court, the bond before us, in so far as laborers and materialmen are concerned, must be treated as a statutory bond.

As heretofore stated, the chancellor dismissed the cross bill. We are not satisfied to dispose of the cross bill on demurrer. Although not distinctly or fully brought out, construing it favorably, we think the cross bill discloses possible equities by way of waiver or estoppel in favor of Aluminum Company which call for an answer by the surety and development of all the facts. The case will be remanded to this end.

We have been favored with the able briefs of *amici curiae* representing other materialmen. In so far as these arguments go to the merits of the case before us, we have considered them fully. We think the technical points raised by *amici curiae* are not such as are available to persons appearing in such character.

Reversed and remanded. Costs of appeal divided.