# AIR TEMPERATURE, INC., Appellee, v. TOMMY MORRIS et al., Appellants.—469 S.W.2d 495.

Western Section. December 29, 1970.

Certiorari Denied by Supreme Court July 19, 1971.

James A. Hopper, and Ross, Ross & Hopper, Savannah, for appellants Pettigrew and Finney Contracting Co. Inc. and New Amsterdam Casualty Co.

W. W. Lackey, Savannah, for appellant Hardin County.

Robert B. Smith, Savannah, Whit Lafon, Jackson, for appellee.

MATHERNE, J. Complainant, supplier of materials used to air condition a factory owned by Hardin County, brought suit for $17,983.86 as the sale price of the materials, and seeks to establish a lien on the improved realty by virtue of T.C.A. sec. 64-1115.

Complainant, Air Temperature, Inc., sued Hardin County, the owner of the property; Pettigrew & Finney Contracting Company, the general contractor, hereinafter referred to as the contractor; Tommy Morris d/b/a Morris Refrigerator Company, an alleged subcontractor, hereinafter referred to as Morris; New Amsterdam Casualty Company, surety on a Labor and Material Payment Bond executed by the contractor as principal, hereinafter referred to as surety; Saltillo Manufacturing Company and Henry I. Seigel Company, Inc., as lessees and occupiers of the premises.

In order to understand the insistence of various parties as reflected by the pleadings, and the liability of the parties under the decree of the Chancellor, we deem it appropriate to first make a statement of the facts which gave rise to the litigation.

Hardin County advertised for bids for the installation of an air conditioning system in its factory building at Saltillo, Tennessee. The defendant Morris, being engaged in the business of installing air conditioning systems, was interested in bidding and obtained copies of the plans and specifications. Morris learned the successful bidder on the job would be required to make a performance bond and a labor and material bond. Morris could not make the bond but he made arrangement with the contractor to bid the job in the name of the contractor. Morris states he was to pay the contractor $1,000.00 plus

10% of the profit for the right to bid in its name on this job. The contractor denies this, admits it was to receive some amount, but never said what amount it was to receive. At any rate a bid was submitted by Morris in the name of the contractor, which bid developed to be the low bid, and on December 3, 1964, a written contract in the amount of $36,365.00 was entered into between Hardin County and the contractor. On December 7, 1964 the contractor executed a labor and material bond and a performance bond with Hardin County as obligee, each in the amount of the contract price; each bond being executed by the defendant New Amsterdam Casualty Company as surety. A copy of the labor and material bond is attached hereto as Appendix I.

By contract dated December 15, 1964 the contractor purported to subcontract all the work to be done, with the exception of the electrical work, to Morris. By contract dated December 15, 1964 the contractor purported to subcontract all electrical work to M. J. R. Electrical Company. The proof establishes these contracts were not signed until January 11, 1965, and we hold these purported subcontracts have no bearing on the outcome of this litigation.

The proof establishes all materials sued for were on the job site, the equipment was installed, and considerable duct work had been completed as of January 13, 1965. On that date Morris went to the county judge of Hardin County and requested payment for labor expended and materials and equipment on site as allowed by the contract. The county judge called the architect by telephone and received verbal approval to pay on the contract the sum of $23,940.00. The county judge was at

the time leaving for Nashville, Tennessee and instructed his secretary (deceased at time of trial) to prepare a warrant in that amount. The secretary made the warrant payable to Morris instead of to the contractor, and typed thereon it was paid on the Saltillo Manufacturing Company air conditioning job. Morris deposited this warrant to his bank account on that date.

The record reveals Morris purchased materials and equipment for the Saltillo job from the complainant. The complainant presented four invoices for such material which total $17,563.95. Another charge in the amount of $419.91 reflects a charge made by Carrier Corporation because certain filters ordered for the job were returned to Carrier. This $419.91 is shown in complainant's records as $1840.00 charge to Morris' open account on March 3, 1965, and a $1420.09 credit to that account on April 19, 1965.

By check dated January 11, 1965 Morris paid the complainant $13,500. On that date Morris' bank account against which the check was issued was overdrawn in the amount of $116.65. The complainant's records show it received the $13,500.00 check on January 12, 1965 and credited it to the "Supt. Hardin County Schools, Crump, Tennessee" account, which was an account complainant carried for materials Morris purchased in connection with another contract he had on the Crump Vocational School. The $13,500 check was marked for "For Hardin County Vocational School Account." Morris claims this was a mistake made by his secretary and it should have been marked for the Saltillo job. Morris claims he verbally instructed complainant the $13,500 was from the Saltillo job. The $13,500 check cleared Morris' account at the bank on January 13, 1965, same date the

warrant was deposited. Upon certification by the architect and the contractor, final payment was made by Hardin County to the contractor in the amount of $10,956.28 on April 1, 1965.

The complainant sued on July 25, 1965 for $17,983.86 as the total amount for all materials which went into the Saltillo job. Complainant prayed a lien on the property by virtue of T.C.A. sec. 64-1115, prayed for and was granted an attachment to enforce its lien as provided by T.C.A. sec. 64-1126.

The defendant Morris did not answer and a judgment pro confesso was entered against him.

The defendants Saltillo Manufacturing Company and Henry I. Seigel Company, Inc. were dismissed and there is no appeal therefrom.

The defendant Hardin County answered and denied the complainant was entitled to a lien against its property by virtue of T.C.A. sec. 64-1115; denied complainant was entitled to a judgment against the county; averred the county could not be held liable for the negligence of its officers; averred the contractor and Morris were joint venturers and payment to one was a payment to both, alleged the contractor was by his acts estopped to now claim the $23,940.00 warrant was wrongfully issued to Morris.

The defendant contractor by answer in the nature of a cross-bill denied he was liable to the complainant; alleged wrongful payment by the county to Morris of the $23,940.00 warrant; prayed judgment against the county for any amount found due by the contractor up to the amount of $23,940.00; prayed judgment over against

Morris for any amount found due by the contractor; prayed the complainant be required to credit against any amount found due it the sum of $13,500 paid complainant by Morris.

The defendant surety answered averring substantially the same defense as the contractor plus the averment it signed the bond as surety only, and in the event it be held liable on the bond, it should have judgment over against the principal contractor.

The Chancellor heard the cause on depositions and oral testimony. A decree was entered in favor of the complainant and against defendants Morris, the contractor, the surety, and Hardin County in the amount of $17,983.86 plus interest in the amount of $3,866.46. The Chancellor further decreed the defendant Morris primarily liable for the judgment, and if the contractor had to pay any amount thereof it would be entitled to a judgment over in that amount against Morris; the defendant surety was liable for any decree and cost against Hardin County, and liable to protect Hardin County, against the lien awarded against it. The decree further declared a lien against the property of Hardin County described in the bill, and gave complainant the right to have the property sold by the Clerk & Master for satisfaction of its judgment should the judgment not be paid within sixty days from the date of the decree. The cross-bill of the contractor against Hardin County was dismissed. The defendants were taxed with cost.

 Under the established law of Tennessee, in cases where public improvements are made on land owned by a county there is no lien on the property for materials furnished, neither is there any liability on the part of

the county to the party who furnishes such materials to the contractor. Hardison v. Yeaman (1905) 115 Tenn. 639, 91 S.W. 1111; Tennessee Supply Co. v. Young (1919) 142 Tenn. 142, 218 S.W. 225.

■ The complainant cannot prevail against Hardin County on the basis an official of that county caused a check to be wrongfully issued. As observed in Lawrence County v. White (1956) 200 Tenn. 1, 288 S.W.2d 735 to allow such actions could wreck a county if there were unfaithful or negligent public officials who might obligate the county for untold items totaling huge sums of money. See also, Rhea County v. Sneed (1900) 105 Tenn. 581, 58 S.W. 1063 wherein a county failed to require the execution of a labor and material bond on a bridge construction contract. At the suit of a laborer the Court there held the county was not liable for the negligence of its Bridge Commissioners in failing to require the bond.

For the same reason above stated the contractor cannot prevail against Hardin County on its cross-bill.

We therefore hold the Chancellor erred: (1) in giving judgment against Hardin County; (2) in declaring a lien against the improved property; (3) in ordering a sale of the property to satisfy the judgment; and (4) in failing to dissolve the attachment previously levied against the property. We affirm the Chancellor in dismissing the cross-bill of the contractor against the County.

In order to provide protection and a remedy for the furnishers of materials to contractors who are engaged in a public improvement for a county, the Legislature enacted T.C.A. secs. 12-417 through 12-422. Basically this statute requires, before a contract is let for public works,

the contractor shall execute a bond to the effect that he will pay for all labor and materials used on the project by the contractor or any remote subcontractor. The furnisher of the labor or material, after giving notice as required by Section 12-421, may bring suit in his own name and have recovery on the bond. This lawsuit, however, was not brought under the provisions of that statute.

The right of the complainant to sue at common law on the bond in question was established by the case of National Surety Corp. v. Fischer Steel Corp. (1964) 213 Tenn. 396, 374 S.W.2d 372. The noted portions of the bond in that case are identical to the bond here being considered. The Court, quoting from Day v. Walton, 199 Tenn. 10, 281 S.W.2d 685, stated the general rule to be, "that a bond, whether required by statute or not, is good at common law if entered into voluntarily for a valid consideration, and if it is not repugnant to law or the policy of the law, the surety is bound according to its terms. According to all authorities such a bond is treated as simply a contract."

■ Third party beneficiary contracts are recognized and enforced in Tennessee in the suit of the third party beneficiary. *National Surety Corp.* case supra, and authorities therein cited.

The complainant, as a furnisher of materials, sues as a third party beneficiary under the promise made by the contractor and the surety to pay those parties who furnish labor and materials to the contractor, or any remote subcontractor, for use in the installation of the air conditioning system. The promisee is the owner, Hardin County; the promisors are the contractor and the surety.

According to Restatement, Contracts, secs. 133-147 (1932) a third party beneficiary may be a donee beneficiary, a creditor beneficiary, or an incidental beneficiary. Section 133 of that authority define the three types beneficiary as follows:

"Sec. 133. Definition of Donee Beneficiary, Creditor Beneficiary, incidental Beneficiary.

(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in Subsection (3):

(a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;

(b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary, or a right of the beneficiary against the promisee which has been barred by the Statute of Limitations or by a discharge in bankruptcy, or which is unenforceable because of the Statute of Frauds;

(c) an incidental beneficiary if neither the facts stated in Clause (a) nor those stated in Clause (b) exist.

(2) Such a promise as is described in Subsection (1a) is a gift promise. Such a promise as is described in Subsection (1b) is a promise to discharge the promisee's duty.

(3) * * *"

It is noted the contract for installation of the air conditioning system provides for payment by the owner to the contractor and not to any other party. Under the terms of the construction contract there was no performance or obligation due from Hardin County (promisee) to the complainant (beneficiary).

■ Therefore, from the circumstances, the purpose of the promisee (Hardin County) in obtaining the promise of the performance by the promisors (contractor and surety) was to confer upon the beneficiary (complainant) a right against the promisors to some performance (payment for materials and labor furnished on the job to the contractor or any remote subcontractor) which performance was neither due nor supposed or asserted to be due from the promisee (Hardin County) to the beneficiary (complainant). The complainant is therefore a donee beneficiary.

■ According to the record the complainant had no knowledge of the bond when the materials were furnished; did not materially change its position in reliance thereon; and extended credit to Morris on open account. These facts, however, do not bar complainant's action, because no assent by a donee beneficiary to the contract or knowledge on his part of its existence is necessary to give him a right of action on the contract. Restatement, supra, p. 158.

We therefore conclude the complainant is entitled to recover of the contractor and the surety the amount due for materials furnished to the Saltillo project for use in the installation of the air conditioning system. We must now determine what amount is due complainant for materials furnished.

The defendant Morris had carried an open account with the complainant since 1961. Both complainant's official and Morris testified Morris would call complainant by telephone and order any item he desired for any job to which he wanted it delivered. Most equipment was shipped directly from the manufacturer to the job designated by Morris.

The record reveals the complainant set up a special account for Morris entitled "Supt. Hardin County Schools, Crump, Tennessee." The complainant's official testified this was done because it represented materials sold Morris for the State Vocational School at Crump, Tennessee, and it would be necessary for complainant to sign a waiver of liens as to that account. An examination of these accounts during December 1964 and January thru March 1965 will indicate the true relation of the complainant and Morris.

By his personal checks payable to the complainant, Morris paid complainant $3,000.00 by check dated December 30, 1964 and paid $5,000.00 by check dated January 7, 1965. Both checks were marked "For Hardin County Vocational School Account." The open account of Morris was credited with $3,000.00 on January 4, 1965, and with $5,000.00 on January 8, 1965; there being no proof of additional payments by Morris to complainant during that time. As result of these two credits the

open account of Morris showed a credit balance of $1,728.30 owing to Morris by the complainant as of January 8, 1965. On this same date, January 8, 1965, the "Supt. Hardin County Schools Crump, Tennessee Account" showed a balance owing by Morris of $18,166.01. There is no explanation why the two checks totaling $8,000.00 marked for that account were not applied thereto.

On January 8, 1965 three charges totaling $16,908.80 were entered on the open account. These charges represented materials and equipment which went to the Saltillo job. On January 12, 1965 the open account was charged with $655.15 for materials which went to the Saltillo job. This resulted in a balance due on open account on January 12, 1965 of $17,691.00 of which $17,563.95 represented materials sold to Morris which he used in the Saltillo job.

On January 11, 1965 the open account shows a transfer of the $1,728.30 credit to the "Supt. Hardin County, School, Crump, Tennessee Acct;" the latter account on the same date was credited in that amount, leaving a balance due of $16,437.71. On January 12, 1965 a credit was entered on the Crump School account of $13,500.00, being Morris' personal check dated January 11, 1965, which left a balance due in the Crump School account of $2,937.71.

On March 29, 1965 a credit was entered on the "Supt. Hardin County Schools, Crump, Tennessee" account in the amount of $2,937.71 leaving a balance of zero in that account. On the same date a charge was entered against the open account in the same amount. The complainant's officials testified on that date the complainant executed a waiver of liens on the Crump School.

The complainant carried another account for Morris entitled "Supt. Hardin County Schools job—Special Discount A/c." This account was opened on October 13, 1964 when it was credited with $835.85, and was credited with five additional amounts during that month with a resulting credit balance of $1,615.45 as of October 31, 1964. Each credit to this account was a credit against an invoice charged to the "Supt. Hardin County Schools, Crump, Tennessee" account. There were no charges against this account until March 29, 1965 when the $1,-615.45 was shown transferred to the open account of Morris, which open account was so credited on that date.

This switching of balances from one account to another does not reflect any short changing of Morris by the complainant. This method of accounting clearly demonstrates the complainant dealt with Morris on open account, was relying on the credit of Morris, and would accommodate Morris by switching various charges so as to clear out the balance due on a particular job when that job had to be closed.

This method of accounting also charges complainant with knowledge the $13,500 check dated January 11, 1965 was not for payment on the "Supt. Hardin County Schools, Crump, Tennessee" account. If the two payments of $5,000 and $3,000 had been applied to that account as marked on those checks, and had the $1,615.45 in the "Supt. Hardin County Schools job—Special Discount A/c" been so applied, a total of $9,615.45 would have been credited to that account. Therefore, on January 12, 1965 a balance of only $6,822.26 would have been due. The $13,500 check would have over paid that account considerably.

The complainant, a supplier of materials on open account, cannot be heard to claim the rights of a third party beneficiary without first showing it acted in good faith in the supplying of the materials and in crediting the account with all amounts due to be credited thereon. A court of equity will consider that as done which in good conscience ought to have been done. Norris v. Monarch Fire Ins. Co. (1944) 180 Tenn. 660, 177 S.W. 2d 831. Even though the $13,500 check was marked for "Hardin County School job" the complainant, under the facts, is charged with knowledge it was not intended to be paid on that account. We therefore credit the amount sued for with the sum of $13,500.00, leaving a balance of $4,483.86 as the amount recoverable by complainant in this action.

One invoice upon which complainant relies shows an item of $50.00 for "Deposit on Cylinder." The evidence establishes the complainant did, on order of Morris, send a cylinder of refrigerant to the job. The refrigerant was used in the air conditioning system but the cylinder was to be returned. The cylinder was not returned which resulted in the $50.00 charge. This is a proper charge as against Morris, but we hold it is not a proper claim against the contractor and the surety under the terms of the bond. The custom of the trade was proven to be that these cylinders were not purchased, but only the refrigerant contained therein. The cylinder itself under the facts cannot be deemed "materials" furnished so as to charge the promisors, contractor and surety, for the deposit charge based upon the failure of Morris to return the cylinder.

The $419.91 charge made by Carrier Corporation because of the return of certain filters presents a differ-

ent situation. The filters were ordered as specified in the plans and specifications. It was then determined the entire system would better function without the filters, and they were returned. Had the filters been retained the cost would have been clearly within the terms of the bond, even though they had not been used. The return of the filters reduce considerably the amount which would have otherwise been due. The air conditioning contract, which is made a part of the bond by reference, clearly included the filters. We hold the charge for the return of the filters is such cost as might reasonably be anticipated in the furnishing of materials contracted for. The issue is not presented, and we do not decide, whether any other individual or corporation might be liable for the "return charge," however, under the facts, we hold this amount to be a proper claim under the bond.

We have held the contractor has no claim over and against Hardin County for any amount for which it may be held liable. The contractor also insists it should have a judgment over against Morris for any amount for which it is held liable. In connection with this subject also is the plea of the surety for judgment over against the contractor for any amount for which it may be held liable. We will not consider these claims for judgment over.

The proof establishes the contractor did not attempt to control the job as to the proper installation of the air conditioning system; it did not attend to the ordering of materials nor the payment thereof; it did not hire and pay laborers on the job; it kept no account on the job; and in fact the contractor had absolutely no contact with, control over, or acquaintance with the progress of this contract. All matters were attended to by Morris.

The facts establish the contractor had knowledge of the $23,940.00 payment by the County to Morris a few days after it was made. The only action taken by the contractor was to talk with Morris and accept Morris' statement that he, Morris, had paid all bills and had money in the bank. The contractor also signed an estimate for final payment on the contract wherein it stated all amounts due for labor and material had been paid. With the knowledge the contractor had it did not make inquiry of any possible material supplier, but left the matter wholly in the hands of Morris.

 It is clear the contractor, by allowing its name to be used by Morris, made a misrepresentation to the surety. The surety was in fact guaranteeing the performance of Morris instead of the contractor. It can be understood this resulted in the surety assuming greater risks than it contracted to assume because of the admitted fact Morris could not make bond. This change of principal, or the misrepresentation as to who was in fact the principal, is no defense to the surety under its contractual obligation to the complainant as a donee beneficiary. However, under the law of suretyship, which determines the rights of the surety as against the principal (contractor), this misrepresentation by the principal, and the resulting loss, does give the surety a claim for relief as against the principal.

 As a general rule a misrepresentation made to the surety by the principal will not prevail against a creditor without knowledge of the misrepresentation. In such a situation the creditor is blameless and the remedy of the surety is against the principal. Stearn's Law of Suretyship, Elder's Revision, 5th Ed. sec. 714, p. 216 (1951).

We hold the contractor made a material misrepresentation to the surety under the facts of this case, and loss to the surety resulted therefrom. As between the contractor and the surety the latter is entitled to judgment over against the contractor for any amount it pays in satisfaction of the judgment rendered against it in this cause.

As between the contractor and Morris it is clear Morris collected the $23,940.00 from the County and failed to pay the bill to complainant for materials furnished. It is not necessary to define the exact relationship as between Morris and the contractor. The complainant, as heretofore found, can recover from either or both; and as between the two of them there is a clear defalcation on the part of Morris, either negligently or intentionally. The fact the contractor permitted Morris to maintain complete control of the job does not give to Morris the right to misapply the proceeds received in payment therefor. We conclude the contractor is entitled to judgment over against Morris for any amount the contractor pays on the judgment rendered against it and others in this cause.

The contractor claims error in the allowance of interest by the Chancellor.

"All bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned." T.C.A. sec. 47-14-107.

An account is liquidated and settled when the amount due is fixed by law, or has been ascertained and

agreed upon by the parties. Arco Company v. Garner & Co. (1920), 143 Tenn. 262, 227 S.W. 1025.

Interest as a matter of right is purely statutory, unknown to the common law, and its allowance must be confined to those obligations and demands specified and enumerated in statutory provisions. In cases not so included, it remains, as at common law, a matter of discretion in the jury, or Chancellor, to be allowed or not, according to the facts presented. Southern Construction Company v. Halliburton (1923), 149 Tenn. 319, 258 S.W. 409.

This account cannot be considered as a liquidated or settled account when we hold it was not properly credited with a $13,500.00 payment made to the complainant. Under the facts of this case and in the exercise of sound discretion we cannot allow interest prior to judgment. We hold the complainant is not entitled to interest on the amount herein awarded except from the date of the Chancellor's decree in this cause.

It results the decree of the Chancellor is modified, and a decree shall be entered in this Court; (1) Dismissing the complainant's suit against the defendant Hardin County, and dissolving the attachment heretofore levied against its property; (2) Dismissing the contractor's cross-bill against Hardin County; (3) Rendering judgment in favor of the complainant against the defendants Tommy Morris, Pettigrew and Finney Contracting Company, Inc., and New Amsterdam Casualty Company, jointly and severally in the amount of $4,433.86, plus interest at 6% per annum from the date of the Chancellor's decree; (4) Additional judgment in the amount of $50.00 against Tommy Morris in favor of the com-

plainant, plus interest as stated above; (5) A judgment over in favor of New Amsterdam Casualty Company against Pettigrew and Finney Contracting Company, Inc. for any amount defendant New Amsterdam Casualty Company may pay in satisfaction of the judgment heretofore entered against it and other defendants; (6) A judgment over against Tommy Morris for any amount defendant Pettigrew and Finney Contracting Company, Inc., may pay in satisfaction of the judgment heretofore entered against it and other defendants; (7) All cost in this cause be adjudged against the defendants Tommy Morris, Pettigrew and Finney Contracting Company, Inc., New Amsterdam Casualty Company, and the complainant Air Temperature, Inc., in the amount of one-fourth of all such cost against each named party.

This cause is remanded to the Chancery Court of Hardin County, Tennessee for enforcement of the decree entered in this Court.

Carney, P.J., and Nearn, J., concur.

# NEW AMSTERDAM CASUALTY COMPANY

227 St. Paul Street, Baltimore, Maryland

## LABOR AND MATERIAL PAYMENT BOND

Approved by The American Institute of Architects
A.I.A. Document No. A-311

BOND NUMBER . . . . .. .... . .

**KNOW ALL MEN BY THESE PRESENTS:**

That . PETTIGREW & FINNEY CONTRACTING COMPANY, INC. . . . . . ....

. . Adamsville, Tennessee . . . . . . ... .. .. . . ... ... as Principal, hereinafter called Principal, and NEW AMSTERDAM CASUALTY COMPANY, a corporation organized and existing under the laws of the State of New York, as Surety, hereinafter called Surety, are held and firmly bound unto ... .

HARDIN COUNTY, SAVANNAH, TENNESSEE . . . . . .... . . . . . ... .. . .. ..
as Obligee, hereinafter called Owner, for the use and benefit of claimants as hereinbelow defined, in the amount of

THIRTY SIX THOUSAND, THREE HUNDRED SIXTY FIVE - - - Dollars ($ 36,365.00 . ......), for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents

WHEREAS, Principal has by written agreement dated December 7, 1964
entered into a contract with Owner for Air Conditioning Manufacturing Plant for Saltillo
in accordance with drawings and specifications prepared by Kethman, Bland & Foster Architects & which contract is by reference made a part hereof, and is hereinafter referred to as the Contract Engineers, Inc.

**NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION** is such that if the Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

(1) A claimant is defined as one having a direct contract with the Principal or with a sub-contractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

(2) The above-named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit

(3) No suit or action shall be commenced hereunder by any claimant,

(a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

(b) After the expiration of one (1) year following the date on which Principal ceased work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(c) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated, and not elsewhere.

(4) The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

Signed and sealed this ..... 7th . . . . . . . ...day of. December . ..A.D., 19 .64 .

PETTIGREW & FINNEY CONTRACTING COMPANY, INC. Principal

**[APPENDIX 1]**

By ........................ (Seal)
Title .....................

Witness)
Attest ) 
Title

Attest ........................
NEW AMSTERDAM CASUALTY COMPANY

Title (Elizabeth A. Roberts)

By ........................ (Seal)
Title (James S. Dickey) Attorney-in-fact

Contract Form 1-471 Ed. Date 11-61

This bond is issued simultaneously with another bond in favor of the owner conditioned for the full and faithful performance of the Contract

(A4202)