Chester HEGLAR, Individually and d/b/a
H & R Plumbing and Electrical
Company, Appellee,

v.

McADOO CONTRACTORS, INC. and the
Aetna Casualty and Surety Com-
pany, Appellants.

Court of Appeals of Tennessee,
Western Section.

May 16, 1972.

Certiorari Denied by Supreme Court
Oct. 2, 1972.

James Glasgow, Union City, G. Griffin Boyte, Humboldt, for appellants.

John F. Kizer, Milan, for appellee.

NEARN, Judge.

Humboldt Housing Authority, a public corporate body politic, created under the Housing Authority Law of the State of Tennessee, entered into a contract with McAdoo Contractors, Inc., for the construction of a certain public housing project in Humboldt, Gibson County, Tennessee. McAdoo subcontracted the plumbing work to complainant, Chester Heglar. After the housing project was completed, McAdoo was paid by the Housing Authority the amount due under the contract less a per diem penalty stipulated in the contract for McAdoo's failure to complete construction within the time prescribed in the contract with Humboldt. McAdoo paid Heglar the greater portion of the subcontract amount for the plumbing work, but withheld the approximate sum of Eleven Thousand ($11,000.00) Dollars. Heglar filed his Bill in the Chancery Court of Gibson County against McAdoo and The Aetna Casualty & Surety Company, the surety on McAdoo's performance and payment bond with Humboldt Housing Authority. The Chancellor held against both McAdoo and the surety. Both McAdoo and the surety have appealed.

Four Assignments of Error have been filed with this Court. The first Assignment of Error is that the weight of the evidence preponderates against the findings and the Decree of the Chancellor. The second and third fault the Chancellor for failing to apply T.C.A. Sections 12–421 and 12–422 as a bar to complainant's recovery. The last complains of the Chancellor's ruling that certain testimony was inadmissable.

The nature of the first Assignment of Error requires that we briefly review the facts.

The work on the housing project was begun on July 23, 1968 and, according to the contract between the Housing Authority and McAdoo, was to be completed by July 17, 1969. The job was not completed until December 16, 1969. This suit was filed October 29, 1970.

McAdoo was charged 146 days' delay by the Housing Authority and, according to the terms of the contract with the Housing Authority, was assessed approximately Nineteen Thousand ($19,000.00) Dollars as liquidated damages. McAdoo sought to prove as a factual defense to the Original Bill that Heglar was responsible for at least 82 days of the delay. Setoff was claimed by McAdoo against Heglar in the amount of Eleven Thousand ($11,000.00) Dollars. The proof mainly consists of the testimony from various witnesses from each side with their version of which party to this suit or a third party caused the delay. It was Heglar's testimony and that of his witnesses that Heglar caused no delay and, if anyone was to be blamed for the delay, it was either McAdoo or other subcontractors. On the other hand, McAdoo's witnesses and proof attempted to show that the fault for the delay was to be laid at Heglar's doorstep. However, on July 13, 1970, approximately seven months after completion, McAdoo wrote the Housing Authority seeking to avoid the contract penalty by laying the blame for the delay on the weather, strikes, failure of the dry wall subcontractor to properly perform, change orders, and skilled manpower short-

age in the plumbing and carpentry trades. It was later admitted that there was no skilled manpower shortage. No cause, which would be directly attributable to Heglar, was given to the Housing Authority in the letter of July 13, 1970, by McAdoo as a reason for the delay. Further, many of the daily work reports of the overall construction supervisor, employed by the architect, were favorable to Heglar and listed many causes other than the plumbing work for the delay, including delay caused directly by McAdoo.

■ This cause has arrived in this Court accompanied by a presumption of the correctness of the Chancellor's findings of fact below. T.C.A. 27–303. We see no reason to unduly lengthen this Opinion by describing in detail the pros and cons of the testimony. Suffice it to say that we have weighed the evidence on the factual issue presented and find that it does not preponderate against the Chancellor's finding that Heglar was not the cause of the delay and that McAdoo had failed to prove its right of setoff. In fact, the evidence preponderates in favor of the Court's finding. Accordingly, the first Assignment of Error is overruled.

■ While we are about the matter of reviewing evidence, we think it proper at this point in the Opinion to consider appellant's fourth Assignment of Error. During the course of the trial, counsel for appellant sought to introduce the testimony of James Guy as that of an expert in the construction trade. The excluded testimony was preserved in the record by an offer of proof. The witness was engaged in the construction business and was asked his opinion of the cause of a portion of the delay based upon hypothetical questions. The Trial Court ruled the testimony incompetent and gave no reason for its ruling. The witness was not familiar with the project under consideration and was called upon in effect to give his opinion as to the cause or blame for the overall delay on the job. Such opinion would of necessity be based on gross speculation since numerous variables such as weather and the prompt and proper performance or nonperformance of other subcontractors and the general contractor would be involved as well as contract change orders. Furthermore, expert testimony was uncalled for in this instance. The real question was not *what* caused the delay but *who* caused the delay. It was a simple matter of which witnesses were to be believed. By his certificate of election, the Trial Judge was made an expert in that field and none other was needed. In any event, the admissability of expert testimony is a matter largely within the sound discretion of the Trial Court. Thomas v. Harper (1964 M.S.) 53 Tenn. App. 549, 385 S.W.2d 130. We find no abuse of discretion. The fourth Assignment of Error is respectfully overruled.

■ Since public lands are not subject to labor and materialmen's liens [See Air Temperature, Inc. v. Morris (1970 W.S.) Tenn.App., 469 S.W.2d 495], the Legislature has seen fit to require that all public works be bonded for the protection of laborers and materialmen. T.C.A. 12–417. T.C.A. Section 12–421 sets out the required notice to be given by the furnisher of labor or material for such public jobs, and T.C.A. Section 12–422 limits the time for filing suits on the contractor's bond. T.C.A. Section 12–422 is as follows:

> *"Joinder of parties—Limitation of actions.*—Several persons entitled may join in one suit on such bond, or one may file a bill in equity in behalf of all such, who may, upon execution of a bond for costs, by petition assert their rights in the proceeding; provided, that action shall be brought or claims so filed within six (6) months following the completion of such public work, or of the furnishing of such labor or materials."

The Original Bill in this case was not filed until ten months after completion of the project and counsel for appellant strongly relies upon the case of City of Knoxville v. Burgess (1943) 180 Tenn. 412,

175 S.W.2d 548, to support the position that the bond in the instant case is a statutory bond and the suit was not timely filed pursuant to the statute, and should have been dismissed by the Trial Court.

Counsel for appellee takes the position that the instant bond is a common law bond, not governed by the statutes and therefore not subject to the notice and time limitation requirements as set out in the Code. Reliance is made on the case of Air Temperature, Inc. v. Morris, supra, and others for the appellee's position.

The pivotal point on which the remaining Assignments of Error turn is the character of the bond; that is, whether it be a statutory or common law bond. If it is regarded as a common law bond, the suit is not subject to the statutory limitations. If it is regarded as a statutory bond, suit is subject to the statutory limitations. A determination of this issue requires a study of the case law on this question. It is our opinion that the result reached heretofore by the Courts has been predetermined by the nature of the bond in each case.

In Knoxville v. Burgess, supra, the city of Knoxville entered into a contract for municipal improvements with a contractor. The contractor defaulted in payment to laborers and materialmen. The city filed a Bill, in the nature of an interpleader, making the surety and unpaid creditors defendants. A creditor answered and filed a Cross-Bill against the surety and the contractor. The surety demurred to the Cross-Bill on the grounds that the Cross-Bill was not timely or properly brought under the terms of the Code. The Trial Court sustained the demurrer and the surety prosecuted its appeal to the Supreme Court. The decisive issue in the case was the nature of the bond; that is, statutory or common law. Both the Trial Court and the Supreme Court held the bond was a statutory bond and that the cross-complainant had failed to meet the statutory requirements as to notice and was barred under the limitation of T.C.A. Section 12-

422. In *Burgess*, as well as the instant case, the bond is dual in nature; that is, in one aspect it protects the governmental agency, in another it protects laborers and materialmen. In such cases the obligation to the governmental agency may be subject to the common law and the obligation to laborers and materialmen may be subject to the statute. Cass v. Smith (1921) 146 Tenn. 218, 240 S.W. 778; Knoxville v. Burgess, supra. We are unable to perceive any material difference in the bond in the subject case and the bond in the *Burgess* case. It was contended in the *Burgess* case (just as counsel for appellee contends in this case) that because the bond contains no provision for notice of claim after completion of the work or furnishing of labor or material and contains no provision for a period of limitation for suit, that the bond cannot be regarded as a statutory bond. In answering this contention, Justice Green pointed out that the statute does not prescribe any particular form for the required bond and in those cases where the bond is silent, the terms of the statute are implied and prevail. To further describe the bond in the instant case would be but to copy the description of the bond in the Burgess case. Our examination of the instant bond impels us to the conclusion that the surety undertook no further obligation than is required by the statute.

The case of Air Temperature, Inc. v. Morris, supra, is readily distinguishable from the instant case. In the published Opinion of this Court there is found a copy of the bond under study in that case. That bond was clearly broader than the statute in that the terms thereof permitted suit to be filed by a claimant within one year from termination of the work.

In the case of Hogan v. Walsh (1944) 180 Tenn. 670, 177 S.W.2d 835, which is found in the same bound South Western Reporter as Knoxville v. Burgess, supra, the Supreme Court held that bond was a common law bond and an action thereon could be brought independently of the statute. The verbiage of the *Hogan* bond

was: "shall assure and protect all laborers and furnishers of material on said work * * *, *and also independently of said statutes.*" The verbiage of the instant bond is: "and shall assure and protect all laborers and furnishers of material on said work, both *as required by applicable law.*" The bond in the instant case limits liability to the terms of the statute and does not broaden it.

The bond in the case of National Surety v. Fischer Steel Corp. (1964) 213 Tenn. 396, 374 S.W.2d 372, was identical to the bond in the *Air Temperature* case, supra, and the holding in the latter case was based on the Supreme Court's decision in the former case. In both cases it was held that the bond was broader than the statute and that suit could be maintained on a common law basis without regard to the statute.

In Day v. Walton (1955) 199 Tenn. 10, 281 S.W.2d 685, the bond under consideration by the Court was "not an official bond because it is neither authorized nor required by statute". In the instant case the bond is both authorized and required by law.

■ After reviewing the authorities and examining the instant bond, we hold that the bond in this case is no broader than the statute. Therefore, it must be regarded as a statutory bond and any claimant there-under must comply with the terms of the applicable statutes in order to maintain a suit against the surety.

■ Chester Heglar admittedly has not complied with the terms of the applicable statutes. He cannot maintain the suit against the surety on the bond and the Trial Court should have dismissed the suit as to the defendant surety, The Aetna Casualty and Surety Company. However, the failure of Heglar to satisfy statutory requirements affects his rights against the surety only. It has no effect on his right to maintain a suit against the party with whom he contracted for the breach thereof.

It results that the second and third Assignments of Error as to the defendant surety are sustained. So much of the Final Decree awarding judgment against the surety on the bond is reversed. The judgment against the contractor defendant, McAdoo Contractors, Inc., is affirmed and the cause is remanded to the Law and Equity Court of Gibson County, Tennessee, for enforcement of the judgment against McAdoo Contractors, Inc. Cost of appeal is adjudged against McAdoo Contractors, Inc., and the surety on its appeal bond.

CARNEY, P. J., and MATHERNE, J., concur.