**UNITED AMERICAN BANK OF MEMPHIS, Plaintiff-Appellant,**

v.

**Phil B. GARDNER and Mid-South Title Insurance Corp., Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Nov. 19, 1985.

Application for Permission to Appeal Denied Jan. 27, 1986.

Ronald Lee Gilman, Memphis, for plaintiff-appellant.

William F. Kirsch and John R. Branson, Memphis, for defendants-appellees.

NEARN, Presiding Judge.

Plaintiff has appealed from an order granting summary judgment in favor of the defendants.

The United American Bank of Memphis (UABM) filed suit in the Circuit Court of Shelby County against Mid-South Title Insurance Corporation and its staff attorney, Phil B. Gardner. The complaint alleged that the defendants breached their duty either in contract or tort, or both, to promptly record a release deed releasing a trust deed indenture upon certain real property. Further, the complaint alleges that as a result of said breach of duty, plaintiffs suffered a monetary loss in excess of one million dollars. The plaintiff sought recovery of that loss.

■ If the record presents any disputed material issue of fact, the granting of a Summary Judgment is improper and the resolution of those disputed issues must be reserved for the trier of the facts. *See Evco Corp. v. Ross,* (1975 Tenn.) 528

S.W.2d 20; Rule 56, T.R.C.P. Appellant's brief states: "a number of material facts remain at issue including:

(a) Whether or not defendants had undertaken the obligation to promptly record the release deed in question.

(b) Whether or not harm to UABM in not promptly recording the release deed was reasonably foreseeable.

(c) Whether or not UABM was an intended beneficiary of defendants' contractual duties, or only an incidental beneficiary.

(d) Whether or not UABM should be barred from recovery by reason of either contributory negligence or estoppel."

An analysis of those "facts" reveal that they are not facts, but conclusions to be drawn from facts. Additionally, the brief states "Since the order granting summary judgment gives no clue as to how the trial court dealt with these issues, the judgment should be reversed and the case remanded for a trial on the merits." We also note that the Trial Judge gave no reason for granting summary judgment. The record consists of lengthy depositions of various witnesses and affidavits. Thus, it appears that plaintiff really does not desire to adduce any more evidence than has already been preserved and that there actually are no material disputed facts. Plaintiff actually appears to be asserting that a proper disposition at the trial level requires that the Trial Judge state his conclusions in the summary judgment so that they may be tested on appeal. Be that as it may, we have independently reviewed the matter to determine if we can find any material disputed issues of fact. We find none. Since the Trial Judge gave no reasons for his action it is our function to determine whether there is a lawful reason for his action. *See Hopkins v. Hopkins,* (1978 Tenn.) 572 S.W.2d 639, 641; *Adams v. Underwood,* (1971) 225 Tenn. 428, 470 S.W.2d 180, 187. We find there is.

The facts necessary for an understanding of our disposition of this case are as follows: United American Bank of *Knoxville* (UABK) was the owner of a million and a quarter plus dollar corporate

note secured by a second mortgage or trust deed on real property located in Memphis, Shelby County, Tennessee. UABM on April 11, 1977, purchased a share, participation or percentage of that note. Subsequently, on June 29, 1978, May 30, 1979, and December 9, 1981, UABM purchased additional shares so that upon the December 1981 purchase, UABM owned 100% of the note.

Sometime prior to September 10, 1981, the owners of the secured real property negotiated a sale thereof to a California partnership. UABK was privy to that sale and on September 10th or 11th executed a release of the second trust deed aforementioned. At the same time the owners of the property conveyed it to the California partnership. Prior to the sale the purchaser had requested that Pioneer Insurance Company, a California corporation, issue a title policy commitment on the property to be conveyed. Pioneer retained defendant Mid-South Title Company to provide a title commitment and it was furnished by Mid-South to Pioneer; the same being prepared by its counsel and co-defendant Gardner. Parties other than Mid-South closed the sale of the property. On September 15, 1981, Mid-South received from Pioneer the release executed by UABK. On April 21, 1983, Mid-South recorded the release deed.

As may now be perceived a problem arises because at the time UABM purchased the final participation in the note, the security therefor had been released but no recording had been made of that fact. Therefore, plaintiff insists that it was damaged by the failure to record the release deed, for had it been recorded plaintiff would have been aware of the release of the security.

One other noteworthy event occurred. UABK was declared insolvent on February 14, 1983, thereby foreclosing any real chance of plaintiff's recovery from that source. Accordingly, they have looked elsewhere.

The pivotal issue upon which all else depends is whether the defendants owed a duty to this plaintiff under either a con-tract or tort theory of liability. Contractual duties are created either by the terms of the contract or by legal implications therefrom flowing. *See E.O. Bailey & Co. v. Union Planters Title Guaranty Co.,* (1950) 33 Tenn.App. 439, 232 S.W.2d 309; 17 Am.Jur.2d, "Contracts" § 1. In tort, the duty is created by law. *See Dabb v. T.V.A.,* (1952) 194 Tenn. 185, 250 S.W.2d 67, 69; W. Prosser, *Law of Torts,* 4th Ed., p. 613. In either contract or tort, the breach of the duty so imposed is the *sine qua non* of the matter.

Counsel for appellant recognizes that no direct contract exists between plaintiffs and defendants by which a contractual duty is specifically created. However, counsel contends that the plaintiff is a third party beneficiary of the contract between defendants and the purchasers of the real property. Tennessee recognizes the theory of unnamed third party beneficiaries of a contract. See e.g. *National Sur. Corp. v. Fischer Steel Corp.,* (1964) 213 Tenn. 396, 374 S.W.2d 372; *Air Temperature, Inc. v. Morris,* (1970) 63 Tenn. App. 90, 469 S.W.2d 495.

█ The requisites necessary to establish a third party beneficiary relationship are: (1) a valid contract made upon sufficient consideration between the promisor and promisee; and (2) the clear intent to have the contract operate for benefit of a third party. *Willard v. Claborn,* (1967) 220 Tenn. 501, 419 S.W.2d 168, 169–170; *Edison v. Hardward Mutual Casualty Co.,* (1950) 191 Tenn. 430, 234 S.W.2d 836, 840. With those criteria in mind we examine the circumstance of the contract.

█ It appears that Pioneer is a title insurance company of national scope and employs reputable local title insurance companies to act as its agents for the issuance of title commitments and for owner's title insurance policies on Pioneer Title Company forms. Apparently, the purchasing California partnership was a long standing customer of Pioneer and requested that Pioneer issue a policy on the Shelby County land involved in this case. Pioneer then

contacted Mid-South requesting that it examine title to the premises, issue a commitment on Pioneer form and assist in the closing of the matter. Pursuant to its instructions, Mid-South examined title and issued a title commitment on a Pioneer form. The commitment was addressed to the contemplated purchasers and committed Pioneer to issue an owner's title policy, containing certain exceptions, upon certain requirements being met including: 1. filing a warranty deed from the seller to the purchaser; and "7. Discharge Trust Deed to the United American Bank in Knoxville recorded under Register's No. L9–7570 of the aforesaid records." Consequently, there is no contract between the defendants Mid-South (and Gardner) and the prospective purchaser. The contract for title insurance was between Pioneer and the prospective purchasers. If the principal on a contract is disclosed, i.e., Pioneer, the contract is that of the principal alone unless the agent manifests a contrary intent. See, e.g. *Weeks v. Summerlin*, (1970) 62 Tenn.App. 650, 466 S.W.2d 894.

Insofar as the contract between Pioneer and Mid-South (and Gardner) as to the issuance of a commitment is concerned, Mid-South had completed its end of the bargain by the issuance of the commitment. Under that commitment neither Pioneer nor Mid-South agreed to prepare or file for record any instruments whatsoever. The commitment became operative when Pioneer was furnished proof that its requirements had been met. Then, Pioneer would be bound under its contract with the purchaser to issue an owners policy. Insofar as the contract between Pioneer and the purchaser is concerned, Pioneer would have been free to waive any requirement that it had made and such waiver certainly would give no cause of action to a stranger.

■ We hold that UABM was never an intended third party beneficiary under the agency contract between Pioneer and Mid-South nor under the contract between Pioneer and the purchasers. Perhaps it was an incidental beneficiary but never an intended third party beneficiary. While we do not decide, it would seem to us that the only ones who could arguably occupy the position of third party beneficiaries to such contracts as these would be the vendor and vendee of the real property. If we were to hold in this instance that a mortgage holder was an intended third party beneficiary of a contract between a purchaser and a title company or a title insurance company and its agent, logic would require us to also hold that as a matter of law a mortgage holder, without more, is an intended third party beneficiary of every contract for the sale of encumbered property, which supposedly would entitle the mortgagee to bring a suit for specific performance if the buy-sell agreement were breached. We do not perceive such to be sound law.

Since this plaintiff is not a third party beneficiary of any contract there was no duty in contract owed to plaintiff by Mid-South or Gardner to record the release of the Trust Deed and its claim in contract must fail.

■ Counsel for plaintiff argues that defendants owed a general duty to the public to promptly record the release deed and its failure to do so constitutes a tort and renders the defendants liable to anyone injured by that failure since such duty arises independent of contract and would therefore be applicable to all. In short, it is argued that the failure to record a release deed constitutes an act of negligence and if anyone not in privity suffers thereby, the negligent party is responsible in damages. Counsel recognizes that there are three elements necessary to the existence of a cause of action for negligence, *viz:*

(1) a duty of care owed by the defendant to the plaintiff;

(2) a breach of that duty;

(3) a causal relation between the injury to the plaintiff and defendant's breach of his duty of care.

*Shouse v. Otis*, (1969) 224 Tenn. 1, 448 S.W.2d 673.

This case lacks at least one of those elements—that of duty.

We hold that the simple failure to record a release or for that matter a trust deed or a warranty deed does not constitute a tort. Such failure may well give rise to an action in contract to parties in privity or contemplated but does not create a cause of action in any member of the general public who might be injured thereby. If it did every title examiner who lists an unreleased trust deed on a title commitment would have a cause of action against the party who negligently failed to release the trust deed. Every homeowner who has failed to record his release deed sent him by the mortgage company after thirty years of payment would have committed a tort. Also, we suppose every person who delayed recording a trust deed but did file one prior to the filing of another trust deed would be liable in tort to the holder of the later trust deed. In this case if any tortious act was committed it was committed by UABK. If UABK did have an evil motive, which is not alleged, in releasing the Trust Deed, it alone is answerable for it, not innocent bystanders.

Counsel for UABM asserts T.C.A. § 66–25–101 is a statutory basis for the creation of a duty upon Mid-South and Gardner and the violation of the statute renders one liable in tort. The statute provides:

> 66–25–101. Release of record required. —When a debt secured by a mortgage, deed of trust, or by lien retained in a deed of conveyance of land or bill of sale, or other instrument, has been fully paid or satisfied, the mortgagee, transferee, or assignee of the mortgage or the legal holder of the debt secured by deed of trust or lien who has received payment or satisfaction of the debt, must satisfy the record either by entry on the merits of the record of the mortgage, deed of trust, deed or other instrument, or by a formal deed of release.

Reliance upon the statute in this instance is completely misplaced. The statute first provides "When a debt ... has been *fully paid or satisfied.*" Only full payment or satisfaction triggers the statute. Furthermore, if full payment had been made, this case would not be before us as UABM, the plaintiff would be paid and have no complaint whatsoever. The debt has never been satisfied. The release does not purport to state the debt has been satisfied. In fact, it states the contrary and expressly releases the lien only. The statute does not apply.

The result is that the judgment below is affirmed with costs of appeal adjudged against appellant and surety.

Done at Jackson in the two hundred and tenth year of our Independence and in the one hundred and ninetieth year of our Statehood.

TOMLIN and CRAWFORD, JJ., concur.